STATE EX REL. MEYER and another, Respondents, vs. KEELER, Deputy conservation warden, Appellant.

*April 11—May 12, 1931.*

For the appellant there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

For the respondents there was a brief by *Graves & Earll* of Prairie du Chien, and oral argument by *J. S. Earll.*

NELSON, J.  The defendant concedes that the search warrant involved in this action was illegal and void and gave no right or authority to the defendant or to the officers associated with him to search the dwelling and other buildings belonging to the petitioners, because such search warrant was issued upon complaint made upon information and belief.  *Glodowski v. State,* 196 Wis. 265, 220 N. W. 227; *State v. Jaeger,* 196 Wis. 99, 219 N. W. 281; *Byars v. U. S.* 273 U. S. 28, 47 Sup. Ct. 248.

The defendant, however, contends that since the furs and skins were found and seized in a building other than a dwelling-house, which he asserts he had a right to search without a search warrant, pursuant to the provisions of sec. 29.05 (6) of the Statutes, they were not illegally seized and therefore they should not have been ordered returned to the petitioners.  Sec. 29.05 (6) is as follows:

"They shall seize and confiscate in the name of the state any wild animal, or carcass or part thereof, caught, killed, taken, had in possession or under control, sold or transported in violation of this chapter; and any such officer may, with or without warrant, open, enter and examine all buildings, camps, vessels or boats in inland or outlying waters, wagons, automobiles or other vehicles, cars, stages, tents, suit cases, valises, packages, and other receptacles and places where he has reason to believe that wild animals, taken or held in violation of this chapter, are to be found; but no dwelling-house or sealed railroad cars shall be searched for the above purposes without a warrant."

Whether this section of the statute is unconstitutional because violative of sec. 11 of art. I of the constitution of

the state of Wisconsin we need not here decide for the reason that the search involved in this action was clearly made under and by virtue of the illegal search warrant with which the defendant was concededly armed at the time of the search. It is undisputed that the defendant deemed it necessary to obtain a search warrant before proceeding to make the search; that the search warrant, immediately after it was issued, was taken to the petitioners' home, where the defendant informed the petitioners, or at least one of them, that he was about to make a search pursuant to the search warrant which he then and there read to one of the petitioners; that immediately thereafter the search commenced and continued until the furs and skins mentioned were seized. That the search was made under and by virtue of the search warrant further appears from the return of the defendant thereto annexed. The return is as follows, omitting the formal parts:

"I hereby certify that in pursuance of the within warrant, I searched for the goods therein described at the place mentioned, and found the following goods, to wit: seven sacks of muskrat furs and other furs.

"And the goods so found I have in charge and custody.
"J. G. KEELER, Deputy Game Warden."

In *Davis v. State,* 187 Wis. 115, 203 N. W. 760, it appears that the officers in that action made their search under a search warrant, according to the return made, but later attempted to justify their search on the ground that they raided the premises, not by authority of the search warrant but because it was a disorderly place, which they had a right to break into in order to arrest the occupants. In disposing of the claim made by the State in *Davis v. State, supra,* Mr. Justice OWEN, speaking for this court, said:

"We have carefully considered the evidence in this case, and we regard the attitude of the State as nothing more nor less than a flimsy and transparent attempt to avoid the

consequences of the decision of this court in *State v. Baltes*, 183 Wis. 545, 198 N. W. 282, where this court held that a search warrant so issued was void.

"It will be noted that the search warrant was issued at a time when it was not uncommon for search warrants to issue upon a complaint made upon information and belief, that the raid was made the very day of the issue, and that the return of the officer showed that they had searched the premises of defendant described in the search warrant, had found therein a bottle of moonshine whisky, and pursuant to said search warrant had placed the defendant under arrest. There is much authority for the proposition that this return is conclusive upon the State that the raid was made pursuant to and by virtue of this search warrant. 2 Ency. of Evidence, p. 974, and many cases there cited."

While the *Davis Case* probably does not squarely decide that a return to a search warrant is conclusive upon the State, such is the tenor and effect of the decision. This court is of the opinion that when a search warrant is secured under which certain officers clearly act, and where there appears to be no justification for any claim other than that the search and seizure were made under and by virtue of such search warrant, which is duly returned into court, the State is concluded thereby and should not be permitted to claim as an afterthought that, although the search under the search warrant was illegal, yet, because the search could have been made without a search warrant, it is therefore, notwithstanding the illegal warrant, legal and valid. We think that a citizen has the right to know at least under what claim of authority his premises are being invaded and searched by officers of the law.

The search warrant being clearly illegal and the search and seizure void, the question arises as to whether or not the furs and skins must be returned to the petitioners or put back in the place from whence they were illegally taken. In other words, do the rights of the petitioners, guaranteed to them by the Fourth amendment to the constitution of the United States and by art. I, sec. 11, of the constitution of

the state of Wisconsin, require that the particular furs and skins involved in this action be returned to them? This presents both an interesting and an important question.

As we view the matter, the answer to the question is dependent upon whether the articles seized are property which the petitioners have a right to own or possess or whether the furs and skins are in fact contraband which cannot be owned or possessed legally. The law seems to be clear that where property, which may be legally owned or possessed, is illegally seized, it must, upon proper demand or upon petition to the court, be returned to its owner or possessor. In *Weeks v. U. S.* 232 U. S. 383, 34 Sup. Ct. 341, it was held that certain papers, letters, etc., should have been restored to the accused. In *Silverthorne L. Co. v. U. S.* 251 U. S. 385, 40 Sup. Ct. 182, it was held that certain corporation papers, documents, etc., were properly restored and that photographic copies thereof were improperly made.

However, where the articles seized are contraband and are such as cannot be owned or possessed legally, or are such as are capable of use only in the commission of crime, or are stolen properties, the person from whom they were illegally taken is not entitled to their return and no constitutional right arising under the Fourth amendment to the constitution of the United States, or similar provision of the constitution of a state, is thereby violated.

The term "contraband" has been held to include a malt mill (*Peek v. State,* 19 Ala. App. 370, 97 South. 375); an illicit still (*U. S. v. Camarota,* 278 Fed. 388; *U. S. v. Rykowski,* 267 Fed. 866); membership lists in the I. W. W., an organization seeking to overthrow the government of the United States (*Haywood v. U. S.* 268 Fed. 795); and moonshine liquor (*U. S. v. Mattingly,* 285 Fed. 922; *U. S. v. Alexander,* 278 Fed. 309).

In *Carroll v. U. S.* 267 U. S. 132, 45 Sup. Ct. 280, 284, the following language quoted from *Boyd v. U. S.* 116 U. S. 616, 6 Sup. Ct. 524, 529, is significant: "So, also, the laws

which provide for the search and seizure of articles and things which it is unlawful for a person to have in his possession for the purpose of issue or disposition, such as counterfeit coin, lottery tickets, implements of gambling, etc., are not within this category. *Comm. v. Dana,* 2 Met. (Mass.) 329." The following language is also quoted: "In the case of stolen goods, the owner from whom they were stolen is entitled to their possession, and in the case of excisable or dutiable articles the government has an interest in them for the return of the duties thereon and, until such duties are paid, has a right to keep them under observation or to pursue and drag them from concealment."

In cases involving intoxicating liquors there is found a rather hopeless confusion in the holdings of the courts. This is probably due to the fact that, under certain conditions, liquor could be legally possessed under the federal prohibition law. Certain federal courts have held that, unless the illicit character of the liquor wrongfully seized is shown, it must be restored. *U. S. v. Mattingly,* 285 Fed. 922. In *O'Connor v. Potter,* 276 Fed. 32, it was held that "moonshine" is contraband and will not be returned although the search was defective. In *U. S. v. Alexander,* 278 Fed. 308, it was held that illicit liquor, though seized under an invalid search warrant, will not be returned but will be ordered destroyed. In *Connelly v. U. S.* 275 Fed. 509, at p. 511, it was said: "If the seized property could not possibly be lawfully in the possession of the accused, such as an illicit still, . . . stolen goods, smuggled goods, implements of crime, . . . and the like, then resistance to a motion to impound would be of little avail." In *State v. Kieffer,* 47 S. Dak. 180, 196 N. W. 967, it was held to be error to direct the return of a still and other apparatus to the defendant, the court holding that such property was contraband and not recoverable from any person in possession. In *State v. Goldstein,* 111 Oreg. 221, 224 Pac. 1087, stolen goods, not

the property of the defendant, were involved and the court held that the defendant could not, under such circumstances, complain of their seizure. See, also, Cornelius, "Search and Seizure" (2d ed.) pp. 545, 637, 638, and 639.

The correct rule applicable, as we view it, to the return of articles which have been illegally seized, is substantially, though somewhat extravagantly, stated by Wigmore in vol. 4 of his work on Evidence (2d ed.) p. 636:

"And when a citizen sets up a right to a remedial process for their return [properties illegally seized], certainly the *merits of the articles themselves must come into issue.* If the officials, illegally searching, came across an infernal machine, planned for the city's destruction, and impounded it, shall we say that the diabolical owner of it may appear in court, brazenly demand process for its return, and be supinely accorded by the court a writ of restitution, with perhaps an apology for the 'outrage'? Such is the logical consequence of the doctrine of *Weeks v. U. S., supra, unless the right to return be dependent upon the merits of the document or chattel as being instruments of crime or not.*"

While the learned author is of the opinion that evidence illegally obtained should never be suppressed because so obtained, with which opinion this court does not agree, the above statement by him, nevertheless, contains what we consider to be the correct basis for determining whether illegally seized articles should be returned to their owners.

We are not unmindful of the fact that there is found in *Glodowski v. State, supra,* and in *State v. Jaeger, supra,* language which is sufficiently broad to justify the claim that all property illegally seized must, upon proper motion, be returned to its owner or to the place from which it was taken. In the *Glodowski Case,* at page 268, it was said:

"When the rights secured by the constitutional provision are violated and papers and effects taken by an unreasonable search and seizure, the only method of protecting one whose constitutional rights have been invaded is for the court to order these papers and effects returned to the owner."

Since this language is found in a case involving the seizure of moonshine, it is confidently claimed that it is authority for the proposition that "moonshine" should be returned. A reading of that decision leads to the conclusion that the return of moonshine was not involved except as an incident of a motion to suppress. In *State v. Jaeger, supra,* is found the following language (p. 101):

"If a search warrant is issued upon proof that is not sufficient to sustain a finding of probable cause, the only way in which the court can protect the constitutional rights 'to be secure . . . against unreasonable searches and seizures' is to place the defendant in the same position in which he would have been had the warrant not been improvidently issued."

It seems to us that the language quoted from the two decisions is *obiter,* since the return of the moonshine illegally seized was merely incidental to the more important question before the court. If those cases may be considered as authority for returning illegally seized "moonshine" to its owner or to the place from which it was taken, they are to that extent overruled.

It seems very clear to us that when contraband articles, such as counterfeit bills, bogus coin, stolen properties, implements useful only for committing crimes, illicit liquor, articles which may not lawfully be possessed, or any other similar contraband, to which no one can have a property right, are found in an illegal search, they should not be returned to the persons from whom they were taken. The refusal to return such articles clearly does not involve any right guaranteed by the Fourth amendment to the constitution of the United States or similar constitutional provisions. While courts should at all times jealously guard and protect a citizen in the full enjoyment of his constitutional rights, by suppressing evidence seized in violation of his rights and by prohibiting the use of such illegally obtained evidence in any criminal prosecution brought against him, they should not go farther than the constitution requires.

There is nothing in such constitutional provisions that requires a court to perform the ridiculous act of ordering the return of contraband to a citizen. When evidence illegally obtained is suppressed and when courts see to it that such evidence is in no manner used in a criminal prosecution brought against the person whose constitutional rights have been invaded, his rights are completely vindicated.

We now come to the question specifically involved in this appeal, as to whether the petitioners are entitled to the return of the furs and skins which were illegally seized. In the view we take, the answer is dependent on whether the particular skins were subject to lawful ownership and possession by the petitioners or whether they were in fact contraband. Sec. 29.395 of the Wisconsin Statutes provides as follows:

"It shall be unlawful to have in possession or under control during the open season the carcass or part of a carcass or skin of any protected wild animal showing that the same has been taken during the close season for such animal."

This section was enacted by ch. 120 of the Laws of 1929, approved May 21, 1929, so it was in full force and effect at the time the furs and skins were seized. It is apparent, under this section, that it is unlawful to have in possession, during the open season, the skin of any wild animal showing that it had been taken during the close season. That the State, acting under its police power, had authority to enact such a statute for the purpose of protecting and preserving its game, seems too clear to admit of any controversy. *Lawton v. Steele,* 152 U. S. 133, 14 Sup. Ct. 499; *Geer v. Connecticut,* 161 U. S. 519, 16 Sup. Ct. 600. In *State v. Rodman,* 58 Minn. 393, 59 N. W. 1098, the following statement of the police powers of a state, with respect to its game, is found (p. 400):

"We take it to be the correct doctrine in this country that the ownership of wild animals, so far as they are capable of ownership, is in the State, not as proprietor, but in its sover-

eign capacity, as the representative and for the benefit of all its people in common. The preservation of such animals as are adapted to consumption as food or to any other useful purpose is a matter of public interest; and it is within the police power of the State, as the representative of the people in their united sovereignty, to enact such laws as will best preserve such game and secure its beneficial use in the future to the citizens, and to that end it may adopt any reasonable regulations, not only as to time and manner in which such game may be taken and killed, but also imposing limitations upon the right of property in such game after it has been reduced to possession. Such limitations deprive no person of his property, because he who takes or kills game had no previous right of property in it, and when he acquires such right by reducing it to possession he does so subject to such conditions and limitations as the legislature has seen fit to impose."

We have no doubt that the legislature has full power to pass laws declaring unlawful the possession of carcasses and skins during an open season, which show that the same have been taken during a close season for such animals.

If the State be permitted to take advantage of the knowledge which came to its officers by merely inspecting the furs and skins, it seems clear that the latter were unlawfully possessed at the time they were seized. As before stated, we find nothing in the constitution of this State, or of the United States, which prohibits the holding of contraband articles, even though they have been illegally seized.

In the petition for the alternative writ is found no allegation of ownership of the skins by the petitioners or that they were entitled to the possession of them. The return of the defendant, however, represented that the furs and skins were illegally taken from wild animals in a close season for the killing thereof, as clearly appears from their condition, and that such skins were the property of the State of Wisconsin in trust for the people and that the petitioners

had no right to the ownership or possession thereof.   To the return, the petitioners' attorney made oral reply and denied that the hides and furs were illegal and that the same were the property of the State of Wisconsin.   Upon the trial of the action Mr. McKenzie, chief warden of the State of Wisconsin, was permitted to testify, over the objection of the petitioners, that the skins were dry, early caught musk-rat and mink pelts; that they were caught out of season; that they were summer caught, known in the fur world as "trash."   During a colloquy between the attorneys and the court, Mr. Messerschmidt, attorney for the defendant, stated: "We are willing to show these hides and explain to the court how we can tell that they are illegally caught hides," to which petitioners' attorney replied: "Well, I· will say to the court at this time that there is not going to be any proof offered on the part of these petitioners as to how, when, or where they were caught," whereupon the court said: "Well, I think in this case the testimony already in would be sufficient for the court to find that they were illegally caught furs."   The testimony of Mr. McKenzie was given in a civil proceeding and, as we view it, was not objectionable.   Similar testimony could not, ·of course, be properly given in a criminal case brought against the peti-tioners.

But one other question requires our consideration.   The defendant contends that *mandamus* is not a proper remedy because *mandamus* does not lie when there is another ade-quate remedy; and that replevin is an adequate remedy.   The petitioners, however, cite two cases which they contend sup-port the procedure taken.   The first case is *Bell v. Thomas,* 49 Colo. 76, 111 Pac. 76, 31 L. R. A. N. s. 664, and the second case is *Robinson v. Inches,* 220 Mich. 490, 190 N. W. 227.   Both of these cases are clearly distinguishable, as we view it, from the case at bar in that neither contraband,

nor articles claimed to be contraband, were involved therein. In *Bell v. Thomas* the goods seized were determined by the justice of the peace not to be stolen goods and restitution of the property to the plaintiff therein was ordered. *Mandamus* was held a proper remedy to compel the restoration of the goods. In *Robinson v. Inches* money was seized for use as evidence in a prosecution for gambling, but no complaint was made and none was contemplated. *Mandamus,* under such circumstances, was held proper to compel the return of the money seized. In the case at bar the State claims that the furs were contraband; that a mere inspection of them conclusively shows that they were taken from carcasses illegally caught; that they are therefore not subject to private ownership but belong to the State. Where a mere inspection of articles wrongfully seized reveals that such articles are contraband, or probably contraband, and that such articles cannot lawfully be owned or possessed, or that lawful ownership thereof is very doubtful, we do not think that *mandamus* is the proper remedy. It is our view that replevin is an adequate remedy under the circumstances of this case and would afford both parties an opportunity to try the issues as to whether the furs and skins, or some part of them, are contraband and therefore unlawfully possessed. *Lawton v. Steele,* 152 U. S. 133, 14 Sup. Ct. 499.

For the reasons stated the judgment must be reversed.

*By the Court.*—The judgment of the circuit court is reversed, with directions to dismiss the petition.