STATE, Plaintiff, vs. LIPINSKE, Defendant.

*June 6—September 12, 1933.*

For the plaintiff there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

*M. L. Fugina* of Fountain City and *Morris J. Owen* of Winona, Minnesota, for the defendant.

The following opinion was filed June 29, 1933:

ROSENBERRY, C. J.   Certain incidental questions which will be referred to in the disposition of this matter were dealt with in *Merwin v. Houghton,* 146 Wis. 398, 131 N. W.

838, and *Delta Fish & Fur Farms, Inc. v. Pierce*, 203 Wis. 519, 234 N. W. 881, to which reference is made for the matters there dealt with and for a fuller statement of the facts forming the background of this controversy. Following the decision in *Delta Fish & Fur Farms, Inc. v. Pierce*, the legislature enacted ch. 484 of the Laws of 1931, which created a wild-life, fish and spawning refuge, embracing certain territory therein more specifically described; about one-half or 3,000 acres belonged to the *Delta Fish & Fur Farms, Inc.*, hereinafter referred to as Farms, Inc. Ch. 484 further provides:

"All provisions of subsection (4) of section 29.57 shall be applicable to such refuge and in addition no person shall take or catch any fish or spawn or fish for fish within the boundaries of such refuge; provided, however, that any person licensed to operate a muskrat farm in this area shall not be denied any of his rights pertaining to the operating of such farm and the catching and killing of muskrats."

The defendant was brought to trial in the circuit court upon an information charging him with a violation of ch. 484 (sec. 29.572, Stats.) in that he did unlawfully take, catch, and kill fish and, by the use of a seine, fish for fish in and upon the lands described in said act. To this information the defendant pleaded not guilty. The facts were stipulated, and upon the facts so stipulated the court found the defendant guilty, but being of the opinion that important questions of law were raised under the provisions of sec. 358.08, reported the case with the following questions:

"Question number one: Is chapter 484, Laws of 1931, constitutional?"

"Question number two: Were the acts committed by the defendant a violation of said act?"

By the stipulation the defendant admitted that on the day alleged in the information he did take, catch, and kill fish and, by the use of a seine, fish for fish upon the land described in said act as charged in the information. By the

stipulation it was further admitted that the defendant was the president and employee of Farms, Inc., and that as such he performed the act set forth in the information; that the defendant in taking dogfish and carp was acting for the company and in carrying on the business of the company; that in the conduct of a fish farm by the company, it was necessary from time to time to take and market fish in order to provide an income to the company from its operations, to prevent overstocking of the fish ponds maintained by the company, and to prevent fish dying or becoming diseased because of such overstocking; that the company has no license or permit from the state to propagate fish or animals other than muskrats, or to conduct a fish or fur farm except its license to conduct a muskrat farm.

The stipulation further recites the fact with reference to the acquirement of title to the lands owned by Farms, Inc.; that the lands owned by Farms, Inc., are now wholly disconnected from outside waters; that the waters lying within the boundaries of the lands owned by Farms, Inc., have not been stocked with fish by the state of Wisconsin or any of its agencies; that the fish and fur operations of the company are carried on on the lower two-thirds portion of its land, which portion is now on the average, by reason of the company dam and wells, kept from a third to a half submerged, and wherein and whereon muskrat farming is carried on and fish are stored and propagated, while the upper third portion of the lands is used by the company for ordinary farming operations, including the raising of cattle and domestic animals.

It was further stipulated that that portion of the wild life refuge owned by Farms, Inc., "has contained and now contains large numbers of the following wild birds and animals, both game and predatory: prairie chicken, partridge, pheasants, quail, duck, owls, hawks, crows, rabbits, coon, squirrels, mink, skunk, weasel, gophers, fox, kingfisher, etc., said area being a natural habitat and feeding grounds for

the same." That adjoining the lands of Farms, Inc., is Perrot Park, a wild-life refuge maintained by the state of Wisconsin; that said Farms, Inc., made expenditures in the purchase of land, the drilling of artesian wells for the purpose of maintaining water areas on its lands for the propagation of fish and fur-bearing animals, in ditching said lands, building roads and in developing feeding grounds for such fish and fur-bearing animals and in purchasing muskrats and fish for planting and raising on said lands and in the water areas on said lands. The fish purchased by the company were three carloads of small dogfish, carp, and buffalo, said fish being placed in ditches constructed by the company in Buffalo county, which ditches were connected with and a part of the water areas maintained by the company on said lands in both Buffalo and Trempealeau counties.

From the cases referred to and the stipulation of facts, it appears that Farms, Inc., maintains a breeding place for fish which has no connection with any navigable waters in this state and located wholly within the lands owned by it in fee simple; that as part of its business, Farms, Inc., purchased certain fish for the purpose of propagation, and that the defendant, at the time of his arrest, was engaged in taking such fish from waters situated upon the lands of Farms, Inc., for the purpose of marketing and disposing of them in the ordinary course of its business.

We shall first consider whether what the defendant did as the president and employee of Farms, Inc., constituted a violation of the provisions of ch. 484, for, if it did not, then no question arises as to the constitutionality of that act. It would seem to require no argument upon the facts stated to show that if it is possible for a person or corporation to have title to fish, that Farms, Inc., had title to the fish in question. It is well established that the title to all wild animals within its borders is held by the state in its capacity as sovereign for the benefit of the people of the state. *Krenz v. Nichols,* 197 Wis. 394, 222 N. W. 300; *La Coste*

*v. Louisiana,* 263 U. S. 545, 44 Sup. Ct. 186, 68 Lawy. Ed. 437. When, however, a wild animal or fish has been legally appropriated and reduced to possession, it ceases to be a wild animal in the legal sense. The fox farmer has the same title to the foxes held in captivity upon his premises that he has to the horse standing in his stable or that the circus exhibitor has to the animals confined in cages. When the animal or fish ceases to be wild in the legal sense, the power of the state over it ceases except such power as the state has with respect to the general property of its citizens. This seems elementary. Whether a landowner propagates fish in a glass bowl, a water tank, or a pond, such fish are not wild so long as they have no connection with navigable waters and so long as they are subject to the dominion and control of the owner. It appearing without dispute that the waters are not navigable, have no connection with navigable waters, that the fish sought to be taken are those planted in the waters wholly within the control of Farms, Inc., or propagated on the premises from legally possessed fish, we see no basis upon which the power to prohibit the taking of such fish therefrom can be based. The habits of the animal do not determine whether or not it is *feræ naturæ.* The circumstance that determines whether or not one has property in an animal ordinarily regarded as *feræ naturæ* is the fact that it has been appropriated and reduced to possession. *Buster v. Newkirk,* 20 Johns. (N. Y.) 75; 2 Blackstone, Commentaries, 386. The defendant not having violated the provisions of ch. 484 of the Laws of 1931, no question as to the constitutionality of that act arises in this proceeding.

*By the Court.*—Question number one not answered. Question number two—Were the acts committed by the defendant a violation of said act? Answer: No.

A motion for a rehearing was denied, without costs, on September 12, 1933.