STATE, Plaintiff, vs. BECKER, Defendant.

*May 11—June 5, 1934.*

For the plaintiff there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

For the defendant there was a brief by *M. L. Fugina* of Fountain City and *Morris J. Owen* of Winona, Minnesota, and oral argument by *Mr. Fugina.*

NELSON, J. This is the fourth controversy involving the lands mentioned in the statement of facts or some right asserted as an incident of the ownership thereof, to reach this court. *Merwin v. Houghton,* 146 Wis. 398, 131 N. W. 838; *Delta Fish & Fur Farms, Inc., v. Pierce,* 203 Wis. 519, 234 N. W. 881; *State v. Lipinske,* 212 Wis. 421, 249 N. W. 289. These cases may profitably be read by one who desires to obtain a clear understanding of the situation which has given rise to so much litigation.

Following the decision of this court on February 10, 1931, in *Delta Fish & Fur Farms, Inc., v. Pierce, supra,* in which it was held that Delta Fish & Fur Farms, Inc., had the right to exclude from its lands certain members of the public who asserted the right to hunt and fish thereon, the legislature, on July 3, 1931, enacted ch. 484, Laws of 1931

(printed in the margin[1]), which incorporated into said chapter sec. 29.57 (4) Stats. (also printed in the margin[2]).

Question one inquires as to the constitutionality of ch. 484 (now sec. 29.579, Stats.).

It is clear that the legislature, by enacting said chapter, sought to establish a wild life, fish, and spawning refuge out of the territory embraced therein, and to prohibit the owner of such lands and all others, excepting those licensed to operate a muskrat farm in said area, from hunting, trapping, or fishing thereon.

The principal and only contention of the defendant which, in our opinion, requires consideration is that said chapter

---

[1] AN ACT to create section 29.572 of the statutes, relating to the establishment of a wild life, fish and spawning refuge in Trempealeau county.

The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:

Section 1. A new section is added to the statutes to read: 29.572 Sections one, two, eleven, twelve and part of sections three, ten, thirteen, fourteen, fifteen and twenty-four of township eighteen north, range ten west and north of the Chicago, Burlington and Quincy railroad right of way, and sections seven, seventeen, eighteen and part of section nineteen and the west one-half of section twenty, of township eighteen north, range nine west, lying north of the Chicago, Burlington and Quincy railroad right of way, all located in Trempealeau county, are constituted a wild life, fish and spawning refuge. All provisions of subsection (4) of section 29.57 shall be applicable to such refuge and in addition no person shall take or catch any fish or spawn or fish for fish within the boundaries of such refuge; provided, however, that any person licensed to operate a muskrat farm in this area shall not be denied any of his rights pertaining to the operating of such farm and the catching and killing of muskrats.

Section 2. This act shall take effect upon passage and publication.

[2] 29.57 (4) No owner of lands embraced within any such wild life refuge, and no other person whatever, shall hunt or trap within the boundaries of any wild life refuge, state park, or state fish hatchery lands; nor have in his possession or under his control therein any gun or rifle, unless the same is unloaded and knocked down or enclosed within its carrying case; but nothing herein shall prohibit, prevent, or interfere with the state conservation commission, or its deputies, agents or employees, in the destruction of injurious animals.

offends against sec. 13, art. I, constitution of the state of Wisconsin, which provides:

"The property of no person shall be taken for public use without just compensation therefor."

Whether said chapter also offends against the prohibitions of sec. 1, amendm. XIV, constitution of the United States, which in part provides: "Nor shall any state deprive any person of life, liberty or property without due process of law," need not in our view be considered.

It is clear that if the property of the company was taken for public use by ch. 484, such chapter offends against the constitution of this state. *Janesville v. Carpenter,* 77 Wis. 288, 46 N. W. 128; *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 90 N. W. 1098; *State v. Redmon,* 134 Wis. 89, 114 N. W. 137; *Water Power Cases,* 148 Wis. 124, 134 N. W. 330.

Concededly in this case no compensation was made to the company, nor were any of its rights in any manner acquired by the state.

The question for decision, therefore, is whether the establishment by the legislature of a wild refuge which includes privately-owned lands amounts to a taking of such lands for public use. That such enactment takes or attempts to take property for public use can scarcely admit of argument. No contention is made by the attorney general that ch. 484 does not take the property of the company. The sole contentions made in support of the validity of this law are to the effect: (1) That the title to all wild animals within this state is held by the state in its capacity of sovereign for the benefit of the people of the state. *State ex rel. Meyer v. Keeler,* 205 Wis. 175, 236 N. W. 561; *State v. Lipinske, supra;* sec. 29.02, Stats.; (2) that the state may conserve wild life and regulate or prohibit its taking in any reasonable way it may deem necessary for the public welfare, so long as it does not violate any organic law of the land. *Krenz v. Nichols,* 197 Wis. 394, 222 N. W. 300; and (3) that ch. 484 should be

regarded merely as establishing a close season for all fish and game, except muskrats, in the territory embraced within the wild-life refuge sought to be established.

Contentions numbered one and two are supported by the well-established law, but they are not material to this controversy. Whether the legislature, in the exercise of its police powers, may establish a perpetual close season for fish and game within so limited an area would be a very interesting question, but in our view that question is not before us. The legislature, in enacting said ch. 484, obviously sought to establish a wild-life refuge, not a close season for fish and game.

So far as we are informed, the legislature has never before attempted to incorporate privately-owned property into a wild-life refuge without the consent of its owners or without compensation. Sec. 29.57, Stats., permits the creation of wild-life refuges of limited areas upon applications to the conservation commission by the owners of the lands to be embraced therein. Such applications clearly imply consent by such owners to the creation of such wild-life refuges and waive such rights as the owners of such lands would otherwise have to hunt thereon.

By ch. 475, Laws of 1927, the legislature established a wild-life refuge of that territory popularly known as the Horicon Marsh. That law specifically provided for the purchase, or acquiring by condemnation proceedings, of such lands as were reasonably required to carry out the purposes of the act. That law was assailed on several constitutional grounds. However, in *State ex rel. Hammann v. Levitan,* 200 Wis. 271, 228 N. W. 140, it was sustained as a proper exercise of the authority granted by sec. 3a, art. XI, of the constitution of this state. So much of sec. 3a as was there considered provides:

"The state . . . may acquire by gift, purchase, or condemnation lands for establishing . . . parks . . .; and after the establishment, layout, and completion of such im-

provements, may convey any such real estate thus acquired and not necessary for such improvements, with reservations concerning the future use and occupation of such real estate, so as to protect such public works and improvements, and their environs, and to preserve the view, appearance, light, air, and usefulness of such public works."

It was held that the word "parks" was sufficiently broad to include a wild-life refuge. The court said:

"The establishment of parks for the use of the public, the building of zoological gardens and small game preserves have for a very long time been undertaken through the expenditure of public funds."

Sec. 3a, art. XI, specifically provides how parks (construed to include wild-life refuges) may be acquired.

It is somewhat significant that the recent act of congress relating to the establishment of the "Upper Mississippi Wild Life and Fish Refuge" (43 Stats. at Large, 650, 16 USCA, §§ 721–731) specifically provides for compensation to the owners of any lands required. See *United States v. 2271.29 Acres, More Or Less, Of Lands In La Crosse, Trempealeau, Vernon, and Grant Counties, Wis. et al.* (D. C.) 31 Fed. (2d) 617.

That the taking of the company's lands was for 'a public use is entirely free from doubt. *State ex rel. Hammann v. Levitan, supra; Lyman v. Chase,* 178 Minn. 244, 226 N. W. 633; *Schoemaker v. United States,* 147 U. S. 282, 13 Sup. Ct. 361. In *Lyman v. Chase* it was specifically held that the establishment of a wild-life territory is for a well-recognized public purpose. The court said:

"By acquiring and devoting a suitable habitat for the propagation and preservation of wild life, the state is furthering the interest of the public in game, fish and fur-bearing animals, which it holds for the use and benefit of all."

"To establish a territory for wild life such as game and fish . . . is . . . for a well-recognized public purpose."

It is our conclusion that the lands of the company described in ch. 484 were taken for public use without compensation, and that that chapter violates the constitution of this state, and is therefore void and without force or effect so far as the lands of the company are concerned. Since question one must be answered "No," there seems to be no necessity for answering question number two.

*By the Court.*—Question number one answered "No." Question number two unanswered.