STATE, Appellant, v. HERWIG, Respondent.

*September 7—October 2, 1962.*

For the appellant the cause was argued by *Albert Harriman,* assistant attorney general, and *David H. Bennett,* district attorney of Columbia county, with whom on the brief was *John W. Reynolds,* attorney general.

For the respondent there was a brief and oral argument by *T. J. Sanderson* of Portage.

HALLOWS, J. The appeal is within the provisions of sec. 958.12 (1) (d), Stats., allowing the state to appeal questions of law arising upon the trial of a criminal case with the permission of the trial court and providing a judgment acquitting the defendant of the charge is deemed adverse to the state. This is a test case on a stipulation of facts, and the judgment of conviction or acquittal depended solely upon the constitutionality of the rule.*

Rule, sec. 11.06 (6) (a) [1] of the conservation commission which was promulgated pursuant to sec. 29.174, Stats.,[2] became effective September 1, 1958, and prohibited

---

* For related problem, see *State v. Gecht,* post, p. 455, 117 N. W. (2d) 340.

[1] 1 Wis. Adm. Code, sec. WCD 11.06, reads, in part, as follows: "WCD 11.06 CLOSED AREA; WATERFOWL. A closed season is established on the following described areas, and it is unlawful for any person to take, catch, kill, hunt, or pursue with the use of firearms or bow and arrow any species of wild animals or birds thereon during the periods established in subsec. WCD 10.01 (1) as open seasons on waterfowl.

"(6) *Columbia county.* (a) Arlington. . . ." (There follows a description of the Arlington closed area.)

[2] Sec. 29.174, Stats., reads, in part: "29.174 CONSERVATION OF FISH AND GAME; POWERS OF COMMISSION. (1) There shall be established and maintained, as hereinafter provided, such open and close seasons for the several species of fish and game, and such bag limits, size limits, rest days, and conditions governing the taking of fish and game as will conserve the fish and game supply and insure the citizens of this state continued opportunities for good fishing, hunting, and trapping."

hunting in an area, now known as the Arlington closed area, consisting of about 2,800 acres of privately owned land in prairie-type terrain attractive to waterfowl in the town of Leeds in Columbia county. Within the boundaries of the area is located a small public lake of some 60 acres known as the Arlington goose pond, which is bisected by a public road. Substantially all of the lake east of this road is surrounded by farmland owned by the defendant and his wife in joint tenancy. After a public hearing and over the objection of the defendant and others, the area was closed to all hunting during the open season on waterfowl in the state. The conservation commission has neither purchased nor leased any of the land within the area. As a result of closing the area, the defendant has been damaged to the extent of $500 annually by waterfowl foraging in his corn, alfalfa, and rye fields. On October 7, 1960, during the open season on waterfowl and while in possession of a hunting license and a duck stamp, the defendant shot a teal duck on his land.

No contention is made the shooting was justified on the ground the defendant was protecting his property. A landowner has a qualified privilege to shoot wild game to protect his property when the shooting is reasonably necessary under the then existing circumstances. *State v. Rathbone* (1940), 110 Mont. 225, 100 Pac. (2d) 86; *State v. Burk* (1921), 114 Wash. 370, 195 Pac. 16. However, the duck shot was not damaging the defendant's property at the time and the defendant had no permit from the conservation commission to destroy wild animals causing damage, as required by sec. 29.596, Stats.

The sole issue is whether the rule, which has the force and effect of a statute, is unconstitutional as to the defendant so that he cannot be convicted of its violation. Several constitutional grounds are urged but the only one which has merit is whether as to the defendant the rule was an un-

reasonable exercise of the police power of the state to the extent that its exercise amounted to an unconstitutional taking of the defendant's property.

The wild animals, including migratory birds, within the state, so far as it can be said such animals and birds are the subject of ownership, are owned by the state in its sovereign capacity in trust for the benefit of the people of the state, and hunting regulations in the interest of conservation may be enacted in the exercise of the police power. These principles contended for by the state are so well established as to leave no room for doubt. *State ex rel. Meyer v. Keeler* (1931), 205 Wis. 175, 185, 186, 236 N. W. 561; *State v. Lipinske* (1933), 212 Wis. 421, 249 N. W. 289; *Krenz v. Nichols* (1928), 197 Wis. 394, 222 N. W. 300. It is equally well settled that hunting is a privilege as against the state (commonly called hunting rights in reference to land), which the state can grant, or deny, or regulate—a privilege of reducing wildlife, which the hunter does not own, to possession and to ownership by a means and at a time and place which are lawful. *State ex rel. Meyer v. Keeler, supra; Geer v. Connecticut* (1896), 161 U. S. 519, 533, 16 Sup. Ct. 600, 40 L. Ed. 793; 24 Am. Jur., Game and Game Laws, p. 381, sec. 10.

Open and closed seasons and their variations are extensively used in the promotion of conservation policies for the good of the general public; likewise, the device of the closed area, which generally is more permanent in time and may apply to all hunting or to certain species of animals or birds, is used. The narrow question on this appeal is whether the closed-area device here involved causes such damage to the defendant's property as must be considered a

taking of his property in violation of sec. 13, art. I, Wisconsin constitution.[3]

The state contends that this damage should be considered as merely incidental to a reasonable exercise of the state's police power, and therefore not a "taking" in the constitutional sense. It is the state's position that the reasonableness of the exercise of the police power is solely determined by the ultimate purpose calling for the exercise of power, together with the efficiency or effectiveness of the means used in securing that purpose; any degree of damage resulting from the exercise of such power to a private landowner must be suffered in legal silence. This argument carried to its ultimate conclusion would make unnecessary the power of eminent domain. The damage done by the exercise of the police power must be incidental, which is normally the case. However, the nature and extent of the damage flowing from the act of the government may, in a given case, render the act a taking of private property. There is a limit to the extent to which the state may restrict the use of property or damage property under the police power. What amounts to deprivation of property without due process of law is often difficult to determine, and the determination largely depends upon the nature of the particular case. *Pennsylvania Coal Co. v. Mahon* (1922), 260 U. S. 393, 43 Sup. Ct. 158, 67 L. Ed. 322, 28 A. L. R. 1321; 11 Am. Jur., Constitutional Law, p. 1005, sec. 266; and 12 Am. Jur., Constitutional Law, p. 342, sec. 651. See also *Piper v. Ekern* (1923), 180 Wis. 586, 194 N. W. 159.

If conservation be considered the ultimate purpose of Rule, sec. 11.06 (6) (a), 1 Wis. Adm. Code, there is no doubt the closed area was an effective means. It has resulted

---

[3] "PRIVATE PROPERTY FOR PUBLIC USE. *Section 13.* The property of no person shall be taken for public use without just compensation therefor."

in a significant increase in the concentration of waterfowl in the Arlington goose pond. The approximate peak maximum waterfowl concentration in this lake in 1955 was 401, 1956, 529, and in 1957, 460. After the rule was promulgated, the peak number of waterfowl present on certain days during the migratory season was:

$$
\begin{array}{ll}
1958 & 3,200 \\
1959 & 7,000 \\
1960 & 4,735
\end{array}
$$

These figures include ducks, Canadian, blue, and snow geese. In addition, there are other wildfowl. The importance of the continued existence of the closed area in the state's conservation program and the public purpose in establishing the closed area is best set forth in the stipulation of facts as follows:

"G. That the continued existence of the Arlington closed area is important to the state's conservation program, because it has a lake located in prairie-type area which is a natural attraction to waterfowl. The purpose of this closed area is to attract migratory waterfowl to stop and tarry there in their migratory journey south. Such birds soon learn to use such an area where they are not hunted. They will stop for a while and rest and feed there, and fly in and out of the area for a while before resuming their journey south. The purpose of the closed-area device is not to prevent hunting, but provide better hunting opportunities. This is accomplished by attracting the birds away from their high migratory flight patterns so that they will remain in the area for a time, rather than flying on by and depriving hunters of the opportunity to hunt them. The flights into and out of the closed area provide many opportunities for hunting, which would not be available if there were no closed area. The Arlington closed area, therefore, gives migratory birds a resting place and thus creates and maintains a behavior flight pattern for southern Wisconsin.

"That the location of defendant's property in the said closed area is critical because without it being included, the

right to hunt would extend right up to the lake and the effectiveness of the closed area would be destroyed.

"In this respect, the differences in the habits of migrating game birds and other game animals should be pointed out. Intensive hunting of rabbits, squirrels, or deer, may drive them into hiding and make them wary, but it does not drive them to leave the area. On the other hand, intensive hunting of migratory game birds causes them to leave the area and continue their migratory journey south, beyond the range of Wisconsin hunters. Thus, the principal purpose of closed areas, such as Arlington, is to improve hunting conditions. There is also the additional public purpose of making opportunities for people who only like to watch or take pictures of the birds."

The establishment of the closed area was a co-ordinated part of a conservation program related to the federal game refuges at Necedah and Horicon and several places along the Mississippi river, the state-owned refuges at Necedah and Horicon and with the Bass lake, Pine island, and French creek areas closer to Arlington. The Arlington area is somewhat unique in that no part of it is owned by the state and no owner of the property within the area receives compensation. The Bass lake area in the southern part of Dane county is entirely leased under refuge agreements by the commission. In the Pine island area, the state has purchased 784.31 acres and 450.10 acres are in private ownership without compensation similar to Arlington, and the French creek area is owned entirely by the state.

We see no difference in purpose in the closed season at Arlington than at Bass, Pine, and French creek areas. In 1960 after the defendant and other owners sought to have the lands removed from the closed area, the conservation commission offered to lease the defendant's land for the establishment of a game refuge but the defendant deemed the consideration for such lease (20 cents an acre or about $40 a year) inadequate and refused the offer. We agree

with the trial judge that so far as this defendant is concerned the conservation commission was establishing a game refuge for waterfowl during the migratory season by the use of the closed-season device. By this device the state for all intents has permanently provided a refuge or sanctuary for the migratory waterfowl except that no efforts were made by the state to maintain or provide the waterfowl with food. Both the purpose and the effect of Rule, sec. WCD 11.06 (6) (a), 1 Wis. Adm. Code, were to utilize the defendant's farmland for the support of wildfowl as well as to protect the wildfowl from hunting. In the stipulation of facts, the purpose of the closed-area device is described as including a place where the wildfowl will "stop for a while and rest and feed."

If only the privilege of hunting were withheld from the defendant, we would see little merit in his argument. The state may exercise its police power in the interest of conservation by the closed-area device to protect a game refuge even to the extent of prohibiting all hunting if such is reasonably necessary to protect the species of animals or fowl inhabiting or using the refuge. *Bailey v. Holland* (4th Cir. 1942), 126 Fed. (2d) 317. But such is not the case here. The state has established no refuge for waterfowl at Arlington to protect except by the rule complained of. In apparently smaller areas the state either owns all the land or some of it, or has leased it for a refuge. True, the pond or lake of 60 acres is navigable and, therefore, belongs to the state, but the pond has not been set aside as a refuge. The necessary implication from the facts is that the pond itself is too small an area for a refuge, hence the Arlington closed area. The prohibition of hunting under these circumstances results in an unnaturally concentrated foraging upon the defendant's land by wildfowl and a substantial damage to the defendant's property sufficient to constitute a taking without compensation.

In *State v. Becker* (1934), 215 Wis. 564, 255 N. W. 144, we held that the state cannot create a refuge through the exercise of its police power. The creation of a refuge was considered a taking of private property for a public use and when done without just compensation to the landowner violated sec. 13, art. I, Wisconsin constitution. Rule, sec. WCD 11.06 (6) (a), 1 Wis. Adm. Code, constituted a taking of the defendant's property for a public purpose within the meaning of the prohibition of sec. 13, art. I, Wisconsin constitution.

This does not mean the Arlington closed area should be abandoned. We are convinced by the argument of the state the area is important in the management of wildlife in the interest of conservation, but if the lake and the necessary lands surrounding the pond are to be a refuge, the state should acquire whatever rights or easements are needed by purchase, lease, or condemnation.

*By the Court.*—Judgment affirmed.