C.D. BESADNY, Secretary Department of Natural Resources
You ask whether an ordinance enacted by the Town of Menasha, Winnebago County, impermissibly infringes on the state's authority to regulate hunting. The ordinance is titled "Offenses Endangering Public Safety: Discharging and Carrying Dangerous Weapons Prohibited." It purports to ban all use of firearms and bows and arrows within the town, with exceptions for shooting galleries, cleaning of firearms, carp fishing by bow and arrow and destruction of a property owner's domestic animals on the owner's property. However, the ordinance then excepts seven named families in the no-weapons area, plus all residents (and their guests) of an area covering parts of five sections of the town.[1] (Those residents and their guests are forbidden to carry or discharge weapons within specified distances from buildings, streets, parks, railroad rights of way and the town landfill.)
You suggest that the exceptions shift the goal of the ordinance from the safe use of weapons to the regulation of hunting, through the impermissible device of limiting hunter numbers. I agree. To the extent that the ordinance bars the discharge of weapons by both residents and non-residents, with the limited exceptions first noted, I will assume that the ordinance is rationally related to protecting safety within the town. However, any effort by the town to enforce the ordinance against non-guest, non-residents in the resident-weapons area would infringe on the state's exclusive authority to regulate hunting. It would also exceed the very limited authority which the Legislature has delegated to the Department of Natural Resources ("Department") to control hunter numbers. *Page 138 
These conclusions are consistent with opinions of my predecessors: 27 Op. Att'y Gen. 705 (1938); 32 Op. Att'y Gen. 370 (1943); 36 Op. Att'y Gen. 589 (1947); 57 Op. Att'y Gen. 31 (1968); and 68 Op. Att'y Gen. 81 (1979).
Depending on the facts of a case in which the ordinance is challenged, persons charged with violating the ordinance may be able to raise a successful denial of equal protection defense, as will be discussed below.
Towns have only those powers specifically delegated to them by statute or necessarily implied therefrom. Pugnier v. Ramharter,275 Wis. 70, 73, 81 N.W.2d 38 (1957). Section 60.23(6), Stats., allows a town board, if so authorized by its town meeting, to appropriate money for conservation of natural resources. Section60.23(18) authorizes a town board to regulate the careless use of firearms. I am informed that the no-weapons area can generally be described as "urbanized," and the resident-weapons area as "rural." It is thus likely that the town board has rationally concluded that discharge of firearms in the no-weapons, urbanized area is per se careless. (I am deferring, for the moment, the question of the grandfathered families.)
While chapters 940 and 941 evidence extensive legislative regulation of firearms and other weapons, that regulation does not appear to be comprehensive enough to pre-empt the town's ban on weapons in its urbanized areas.
My main concern is with the resident-weapons portion of the ordinance, which allows residents and their guests to possess and discharge weapons (that is, to hunt) throughout the exempted area. In the context of the ordinance as a whole, it is highly unlikely that a court would find residents and their guests to be presumptively careful in their hunting, and non-residents to be presumptively dangerous to town residents or property. I therefore believe the resident-weapons portion of the ordinance is simply a limitation on hunter numbers, or a "controlled hunting" law, enacted by a town.
Authority to regulate hunting is committed to the state. Statev. Herwig, 17 Wis.2d 442, 446, 117 N.W.2d 335 (1962); Krenz v.Nichols, 197 Wis. 394, 400, 404, 222 N.W. 300 (1928). The Legislature has designated the Department of Natural Resources as its only agent to regulate the taking of fish and game. Secs.23.09(1) *Page 139 
and (2) and 29.174(1), Stats. The latter section is particularly comprehensive:
 The department shall establish and maintain open and close seasons for the several species of fish and game and any bag limits, size limits, rest days and conditions governing the taking of fish and game as will conserve the fish and game supply and ensure the citizens of this state continued opportunities for good fishing, hunting and trapping.
Other sections regulate the use of firearms in hunting: for example, sections 29.221 and 29.222, duties and penalties for hunter who injures another person with a weapon and fails to report accident; and section 29.227, limiting use of weapons by persons under certain ages. Wisconsin Administrative Code chapterNR 10 is an extensive and detailed set of hunting and fishing regulations, promulgated by the department.
The Wisconsin Supreme Court has held that extensive state legislative and regulatory activity may be evidence that the Legislature did not intend to authorize the same activity at a municipal level. Maier v. Racine County, 1 Wis.2d 384, 386,84 N.W.2d 76 (1957). The laws just cited support the conclusion that the Legislature intends hunting to be regulated at the state and not the local level.
Matters of exclusively statewide concern are not within the proper scope of the home rule powers of cities and villages under article XI, section 3 of the Wisconsin Constitution. Van Gilderv. Madison, 222 Wis. 58, 73, 267 N.W. 25, 268 N.W. 108, (1936). Except when a town is exercising village board powers pursuant to a town meeting delegation (sections 60.10(2)(c) and 60.22(3)), the language of the home rule amendment prohibits a town from exercising home rule powers in any event.
Even if the Town of Menasha had the power to regulate hunting, I doubt that it could regulate by limiting the number of hunters, rather than by the methods specified in section 29.174(1). Despite its broad power to regulate hunting, the department, after many unsuccessful attempts, has obtained legislative approval of controlled hunting provisions in only a handful of circumstances. Thus, the Town of Menasha ordinance not only infringes on, but exceeds the bounds of, state authority.
Section 29.174(1) authorizes the Department to apply the regulatory methods listed to the state as a whole, or to any specified *Page 140 
county or part of a county, but does not allow hunter numbers to be limited. The following subparagraphs of section 29.174 authorize the department to limit the number of hunters for wild turkeys (subsection (2)(b)) and Canada geese (subsection (2)(c)), and the number of trappers for wild fisher (subsection (2)(d)). Sections 29.103, 29.107 and 29.1085 also refer to hunter number restrictions. The express mention of species for which the number of hunters or trappers may be limited implies a prohibition on otherwise regulating by limiting the number of hunters. See also
the legislative history cited in 57 Op. Att'y Gen. at 35-36.
In conclusion, I adhere to a 1943 opinion of the attorney general, which stated:
 By way of recapitulation we conclude that the authority to regulate hunting is vested in the state conservation commission [now the department] by statute and to the complete exclusion of the exercise of such power by towns, villages, cities or counties, but that in their conduct of local affairs it may well be that villages, cities and Milwaukee county may properly prevent the use of firearms and the like in such a way that hunters may be able to make but little or no use of the open season for hunting in the area affected by such ordinances, and assuming, of course, that such ordinances do not purport to regulate hunting as such but have been adopted in good faith for the purpose of protecting the public peace and safety.
32 Op. Att'y Gen. at 374.
The exceptions for the seven named families and for residents and their guests present equal protection questions, although the Department may not have standing to raise them. Both exceptions create distinct classes within the people present in the town. The seven families may hunt on their own land, within the no-weapons area, which is allegedly urbanized. Residents and their guests may hunt anywhere within the resident-weapons area, which is allegedly rural. These classifications must be "rationally related to a legitimate legislative goal." United States v. 16.92 Acres of Land, 670 F.2d 1369,1373 (7th Cir. 1982) (emphasis added). I doubt the rationality of the assumption that only residents and their guests, and only the seven families, can conform to the safety needs of the areas in which they may hunt. I strongly doubt the legitimacy of *Page 141 
limiting hunter numbers to residents and their guests, or to a few named individuals.
The Town of Menasha ordinance purports to enhance public safety by forbidding the discharge and possession of hunting weapons. However, the exceptions are, in my opinion, fatal to any valid public welfare justification. Common sense compels the conclusion that a "firearm safety" ordinance which exempts seven families in a settled area of the town and all residents and their guests in rural areas is in fact a "residents only" hunting law. As such, it infringes on authority committed exclusively to the Department and exceeds even the permissible scope of the department's authority.
DJH:MVB
[1] For convenience, I will refer to the two main areas covered by the ordinance as the "no-weapons" area (despite an exception for seven named families) and the "resident-weapons" area. *Page 142