**GREEN ACRES LAND & CATTLE CO., INC., et al., Plaintiffs-Appellants,**

**v.**

**STATE of Missouri and Larry R. Gale, Defendants-Respondents.**

**No. WD 39789.**

Missouri Court of Appeals, Western District.

Nov. 22, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1989.

Application to Transfer Denied April 18, 1989.

Peter R. Healy, Kansas City, for plaintiffs-appellants.

Robert J. Swift, Jr., Jefferson City, for defendants-respondents.

Before COVINGTON, P.J., and NUGENT and GAITAN, JJ.

NUGENT, Judge.

Plaintiffs Green Acres Land and Cattle Co., Inc., and others appeal the dismissal of their petition against the State of Missouri for failure to state a cause of action.

We affirm the judgment.

The petition alleges that the state owns about 4,410 acres in Bates and Vernon counties known as Four Rivers Wildlife Management Area and about 8,635 acres in Vernon and St. Clair counties known as Schell–Osage Wildlife Management Area. That land provides habitat for migrating and resident wildlife and waterfowl, particularly ducks and geese. The state has established and maintains these land areas for the benefit and use of the public and the preservation of wildlife and wetlands.

Plaintiffs' petition, styled a "Petition for Inverse Condemnation of Crops," demands $975,000 in damages. It includes the allegation that defendant's land is used to provide habitat for migrating and resident wildlife and waterfowl, and further that:

> 9. Defendant maintains and manages the Four Rivers and Schell–Osage Wildlife Areas for the benefit and use of the public and for the preservation of wildlife and wetlands.
>
> 10. As a direct result of Defendant's maintenance of these wildlife areas, thousands of waterfowl migrate to and live on Defendant's land, and have invaded and ravaged the crops on the property owned and farmed by Plaintiffs.
>
> 11. The invasion of waterfowl has destroyed crops owned by all the Plaintiffs in the approximate total of 6,000 acres of crops in 1985 and in other amounts in prior years.
>
> 12. As a result of the public use and benefit arising out of maintenance of a preserve on Defendant's land, Plaintiffs have been deprived of the use of their crops.

Thus, the gravamen of the petition is that the state "maintains and manages" the wildlife areas. The defendant filed a motion to dismiss and suggestions in support. After arguments on the motions, the court dismissed the petition, and plaintiffs appealed.

Plaintiffs argue that the trial court erred in dismissing the petition. They maintain that the petition states a cause of action for inverse condemnation in that it pleads each element of that cause of action. It

alleges that plaintiffs' property was taken and damaged by the state for public use without just compensation.

In determining the sufficiency of a petition, the court will assume the truth of all well-pleaded facts and accord the pleader all favorable inferences fairly deducible from those facts. If, viewed most favorably from plaintiff's viewpoint, those facts and inferences show any ground for relief, the court may not dismiss the petition. *American Drilling Service Co. v. City of Springfield,* 614 S.W.2d 266, 271 (Mo.App. 1981).

Plaintiffs support their claim for damages with two factually similar cases. In the first, *State v. Herwig,* 17 Wis.2d 442, 117 N.W.2d 335 (1962), the conservation commission, in an effort to create a protected area for waterfowl, promulgated a rule that prohibited hunting in an area covering 2,800 acres of privately owned land. The defendant, who owned property within that area, objected to the regulation. The protected wildlife consumed approximately five hundred dollars worth of his crops annually. The state prosecuted him for shooting a duck on his property.

The defendant landowner defended his action by arguing that the regulation was unconstitutional because it amounted to an uncompensated taking of his property. The court agreed, finding that the state used the regulation to create a wildlife refuge upon the defendant's property. Thus the state attempted to exercise its police power to appropriate the defendant's land for public use, an unconstitutional taking without just compensation. The court ruled, therefore, that the regulation was invalid. *Id.* 117 N.W.2d at 340.

Similarly, in *Shellnut v. Arkansas State Game & Fish Commission,* 222 Ark. 25, 258 S.W.2d 570 (1953), the state attempted to use its regulatory power to establish a protected wildlife area. The state had previously established the game refuges through leases with private landowners. When the plaintiff refused to renew his lease, the commission issued a special regulation that prohibited hunting on his land. As a result, the plaintiff was unable to protect his crops from marauding deer. The court, finding that the regulation amounted to an unconstitutional taking of the plaintiff's property, upheld an injunction against its enforcement. *Id.* 258 S.W. 2d at 575.

An important distinction makes those cases and their reasoning inapplicable to this case. Here, the state has not exercised any control over the plaintiffs' lands. Instead, the state owns the land upon which it operates its game preserve. The injury suffered by the plaintiffs occurred as an incident to state operation of state-owned land. The plaintiffs apparently recognize this distinction by arguing that the operation of the wildlife management areas amounts to a nuisance and that this nuisance is the cause of their injury.

Missouri courts have recognized that damage to private property in the nature of a nuisance creates a cause of action sounding in inverse condemnation when the nuisance is operated by an entity holding the power of eminent domain. *See Stewart v. City of Marshfield,* 431 S.W.2d 819, 822–23 (Mo.App.1968) (plaintiffs' property suffered damage from the city's operation of its sewer system); *Page v. Metropolitan St. Louis Sewer District,* 377 S.W.2d 348 (Mo.1964) (holding that the city was immune from tort liability for maintaining a nuisance, but suggesting that the case should be re-filed under a theory of inverse condemnation). Since the Missouri Department of Conservation holds the power of eminent domain, Mo. Const. Art. IV, § 41, it is subject to a suit for inverse condemnation. The cause of action is, however, controlled by the law of eminent domain. *Barr v. Kamo Electric Corporation, Inc.,* 648 S.W.2d 616, 618 (Mo.App.1983).

Accordingly, to uphold the dismissal of the plaintiffs' petition for failure to state a cause of action we must conclude that, as a matter of law, the state's establishment and maintenance of these wildlife areas does not constitute the creation and maintenance of a nuisance. "Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully

enjoy his property." *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 880 (Mo.1985) (en banc). To establish liability against the state for damages in this case, therefore, the plaintiffs' petition must allege facts that show that the maintenance of the state's property in its natural state amounts to an "unreasonable, unusual or unnatural" use of the property. This brings into focus the reasonableness of the use. *Id.*

In *Stewart v. City of Marshfield, supra,* and *Page v. St. Louis Metropolitan Sewer District, supra,* the municipalities' liability in inverse condemnation arose from the operation of sewers. In a sewer operation the city collects, transports and processes sewage. Successful operation of a sewer system requires a city to exercise considerable control over the sewage. In the *Stewart* and *Page* cases the effluent controlled by the defendants invaded the plaintiffs' lands causing damage. Operation of the sewers in a manner that placed upon the plaintiff landowners the burden of allowing the sewage to cross their land amounted to a nuisance and, under the law of eminent domain, a taking. *See Stewart,* 431 S.W.2d at 822–23.

In contrast, the damages in the instant case result from the actions of wild birds. Although the state provides a habitat for the birds, it exercises no control over them. Moreover, unlike the situation in *Herwig* and *Shellnut,* where the states attempted to regulate conduct on private lands, the state action here applies only to state-owned land. Nevertheless, because the state maintains the wetlands in their natural state, the bird population has increased. Those birds have foraged the plaintiffs' lands for food. The plaintiffs have, therefore, suffered incidental damage as a result of the state's maintenance of the wildlife areas, as the plaintiffs allege.

The maintenance and management of those wildlife preserves are, however, in the reasonable exercise of the state's constitutional authority. The Missouri Constitution provides:

> The control, management, restoration, conservation and regulation of ... all wildlife resources of the state, including hatcheries, sanctuaries, refuges, reservations, and all other property owned, acquired or used for such purposes and the acquisition and establishment thereof ... shall be vested in a conservation commission....

Mo. Const. Art. IV § 40(a). The establishment, maintenance and management of those preserves are clearly within the authority granted by the constitution, and, therefore, the state's actions are reasonable per se.

We conclude that, as a matter of law, the establishment and maintenance of these wildlife areas in their natural condition under constitutional authority does not amount to an unreasonable use of land or the maintenance of a nuisance.

Thus, taking all the averments of plaintiffs' petition as true, *American Drilling v. City of Springfield, supra,* nevertheless, the petition fails to state a cause of action on which the court can grant relief. The trial court properly dismissed plaintiffs' petition.

Accordingly, we affirm the trial court's dismissal of the plaintiffs' petition for failure to state a cause of action.

All concur.