STATE, Respondent, v. VOSHART, Appellant.*

*No. State 122. Argued April 12, 1968.—Decided June 7, 1968.*
(Also reported in 159 N. W. 2d 1.)

---

* Motion for rehearing denied, without costs, on September 9, 1968.

420

422

424

For the appellant there were briefs by *Bosshard, Sundet & Doyle* and *Patrick R. Doyle,* all of La Crosse, and oral argument by *Patrick R. Doyle.*

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Burleigh A. Randolph,* district attorney of La Crosse county.

ROBERT W. HANSEN, J. This appeal challenges the constitutionality of the Wisconsin statute declaring "lewd, obscene and indecent" materials to be contraband,[1] and the validity of the Wisconsin statute providing that, "if a motion to suppress evidence is granted, property seized shall not be returned" if it is subject to confiscation.[2]

## Scope of Review.

The challenge here is to the constitutionality of the Wisconsin contraband statute on its face, as applied to

---

[1] Sec. 963.04 (5), Stats., in pertinent part providing: "(5) CONTRABAND. Articles of contraband shall be destroyed. This includes without limitation lottery tickets, gambling machines or gambling devices, lewd, obscene or indecent written matter, pictures, sound recordings or motion picture films, . . ."

[2] Sec. 963.025, Stats., in pertinent part providing: ". . . If the motion [to suppress evidence] is granted, the property shall be restored unless it is subject to confiscation or was stolen, in which case it shall not be returned.

obscene films, photos and comic books. We do not deal here with what has been termed the "finely drawn line" between what is obscene and what is not obscene.[3] No claim is made that the particular materials seized are not in fact obscene under any definition of the word.[4] Nor is any claim made that the adversary hearing at which the trial court determined the seized materials to be obscene did not meet constitutional requirements.[5] Nor is there any claim that the procedural steps taken did not meet the constitutional requirements of timeliness.[6]

The issue presented is whether the statute on its face invades constitutionally assured rights of the appellant. This decision is limited to the issue raised. In a recent case, the United States Supreme Court upheld the constitutionality of a New York state statute [7] prohibiting

[3] ". . . [T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed or punished is finely drawn." *Speiser v. Randall* (1958), 357 U. S. 513, 525, 78 Sup. Ct. 1332, 2 L. Ed. 2d 1460.

[4] At the oral argument, appellant's counsel asked whether claim was made that any of the materials seized were not in fact obscene, replied, "Obscenity is irrelevant. To raise that issue here would be tilting at windmills."

[5] In fact, at the fact-finding judicial hearing, the district attorney and appellant's counsel stipulated that the court was to view one film ("The TV Repairman") and that if the court found this film to be obscene, all of the others were to be found in the same category.

[6] Continuances granted in this case were on motion of appellant, without objection by the state. The trial court noted that a principal delay was occasioned by a period of disability on the part of appellant's counsel. No issue as to timeliness is raised by either the state or appellant.

[7] New York Penal Law, sec. 484–h, as enacted by Laws of 1965, ch. 327, in pertinent part provides: "2. It shall be unlawful for any person knowingly to sell or loan for monetary consideration to a minor: (Note "Minor" is elsewhere defined to mean any person under the age of 17 years)

"(a) any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or

the sale to minors under seventeen years of age of books, magazines, photos or motion picture films which, taken as a whole, are "harmful to minors."[8] While one member of the court did not applaud the limited scope of review,[9] the plurality of the court considered only the constitutionality of the statute on its face.[10] In an earlier

portion of the human body which depicts nudity, sexual conduct or sado-masochistic abuse and which is harmful to minors, or

"(b) any book, pamphlet, magazine, printed matter however reproduced, or sound recording which contains any matter enumerated in paragraph (a) of subdivision two hereof, or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sado-masochistic abuse and which, taken as a whole, is harmful to minors.

"(3) It shall be unlawful for any person knowingly to exhibit for a monetary consideration to a minor or knowingly to sell to a minor an admission ticket or pass or knowingly to admit a minor for a monetary consideration to premises whereon there is exhibited, a motion picture, show or other presentation which, in whole or in part, depicts nudity, sexual conduct or sado-masochistic abuse and which is harmful to minors.

"(4) A violation of any provision hereof shall constitute a misdemeanor."

[8] *Ginsberg v. New York* (1968), 390 U. S. 629, 88 Sup. Ct. 1274, 20 L. Ed. 2d 195.

[9] "The Court avoids facing the problem whether the magazines in the present case are 'obscene' when viewed by a 16-year-old boy, although not 'obscene' when viewed by someone 17 years of age or older. It says that Ginsberg's lawyer did not choose to challenge the conviction on the ground that the magazines are not 'obscene.' He chose only to attack the statute on its face. Therefore, the Court reasons, we need not look at the magazines and determine whether they may be excluded from the ambit of the First Amendment as 'obscene' for purposes of this case." J. FORTAS, dissenting, *Ginsberg v. New York, id.* at 88 Sup. Ct. 1297.

[10] "Appellant makes no attack upon sec. 484–h as applied. We therefore have no occasion to consider the sufficiency of the evidence, or such issues as burden of proof, whether expert evidence is either required or permissible, or any other questions which might be pertinent to the application of the statute." *Ginsberg v. New York, id.* at 88 Sup. Ct. 1276, footnote 1.

landmark case in this field involving the constitutionality of the federal antiobscenity statute [11] and the constitutionality of the California antiobscenity statute, [12] the United States Supreme Court held both statutes to be constitutional. [13] Once again, one member of the court challenged the limiting of the scope of review, [14] but the plurality of the court refused to take up the question of whether the particular materials involved were in fact obscene. [15] The route taken by the court plurality recommends itself as the proper course to follow in the case now before us.

[11] The federal obscenity statute, in pertinent part provides: "Every obscene, lewd, lascivious, or filthy book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character; . . . Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier . . . Whoever knowingly deposits for mailing or delivery, anything declared by this section to be nonmailable, or knowingly takes the same from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 U. S. C. (1954), sec. 1461.

[12] The California Penal Code, in pertinent part, provides: "Every person who wilfully and lewdly, . . . writes, composes, stereotypes, prints, publishes, sells, distributes, keeps for sale, or exhibits any obscene or indecent writing, paper, or book; . . . is guilty of a misdemeanor." Deering's, Cal. Penal Code Anno. sec. 311.

[13] *Roth v. United States* (1957), 354 U. S. 476, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498.

[14] "I do not think that reviewing courts can escape this responsibility by saying that the trier of the facts, be it a jury or a judge, has labeled the questioned matter as 'obscene,' for, if 'obscenity' is to be suppressed, the question whether a particular work is of that character involves not really an issue of fact but a question of constitutional *judgment* of the most sensitive and delicate kind." J. HARLAN, dissenting, *Roth v. United States, id.* at page 497.

[15] "No issue is presented in either case concerning the obscenity of the material involved." *Roth v. United States, id.* at page 481, footnote 8.

## Constitutional Criteria.

Is it beyond the power of a state to include in its contraband statute obscene materials where such materials are movie films, photos or comic books? Appellant does not challenge nor appeal the trial court order that the punchboards seized be destroyed as gambling devices and, therefore, contraband. He leaves unchallenged and unappealed the trial court order for destruction of certain articles found to be obscene. He contends only that the movie films, photos and comic books are constitutionally insulated against being found to be articles of contraband.

Once the premise of obscenity in fact has been properly established and judicially determined, the conclusion clearly follows that printed or filmed materials have been given no such mantle of absolute immunity. In the recent *Ginsberg Case,* the United States Supreme Court again stated, "Obscenity is not within the area of protected speech or press," [16] quoting with approval from the majority opinion in the *Roth Case,* "We hold that obscenity is not within the area of constitutionally protected speech or press." [17]

The first amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press." This constitutional assurance of free speech and a free press was added to the original constitution to insure the free exchange of ideas and information in our nation. It has been held by the Supreme Court of the United States to protect the distribution of bizarre works of art, controversial works of literature, as well as unorthodox expressions of personal or public opinion. Thus interpreted, the first amendment does permit the circulation in the water supply of the nation of materials considered by

[16] *Ginsberg v. United States* (1968), *supra,* footnote 8, at 88 Sup. Ct. 1278.

[17] *Roth v. United States* (1957), *supra,* footnote 13, at page 485.

many to be adulterated, in fact, contaminated. However, the first amendment has not been held to protect the pumping of raw sewage into the water mains of our society. Obscenity, constitutionally defined and properly determined, is not protected by the first amendment.

### What is Obscenity?

The words "lewd, obscene or indecent" in the Wisconsin contraband statute must be interpreted in the constitutional sense, as including only printed or filmed materials that are not protected by the first amendment to the United States Constitution as interpreted by the United States Supreme Court. States are free to adopt definitions of obscenity only to the extent that they stay within the bounds of the constitutional criteria set by the United States Supreme Court.[18] There appear to be two such definitions that have been given United States Supreme Court approval.

One is the *Roth* test, referred to in the recent *Ginsberg Case*,[19] as ". . . the formulation for determining obscenity under *Roth* stated in the plurality opinion in *Memoirs v. Massachusetts*."[20] This is a three-pronged test. As capsulized in the *Memoirs Case*, it requires: "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."[21] Where these three elements coalesce, under the *Roth* test, you have the distinct and

---

[18] *Mishkin v. New York* (1966), 383 U. S. 502, 86 Sup. Ct. 958, 16 L. Ed. 2d 56.

[19] *Ginsberg v. United States, supra,* footnote 8.

[20] *Id.*

[21] *Memoirs v. Massachusetts* (1966), 383 U. S. 413, 418, 86 Sup. Ct. 975, 16 L. Ed. 2d 1.

identifiable obscenity which a state may constitutionally suppress, whether by civil or criminal sanction.

The alternative definition defines "obscene" as meaning "hard core pornography." In the case in which the United States Supreme Court upheld the constitutionality of a New York State antiobscenity statute,[22] this definition, adopted by the New York Court of Appeals, was held to meet the constitutional criteria.[23] The New York appellate court described "hard core pornography" as follows: "It focuses predominantly upon what is sexually morbid, grossly perverse and bizarre, without any artistic or scientific purpose or justification. Recognizable 'by the insult it offers, invariably to sex, and to the human spirit' (D. H. Lawrence, Pornography and Obscenity [1930], p. 12), it is to be differentiated from the bawdy and the ribald. Depicting dirt for dirt's sake, the obscene is the vile, rather than the coarse, the blow to senses, not merely to sensibility. It smacks, at times, of fantasy and unreality, of sexual perversion and sickness and represents, according to one thoughtful scholar, 'a debauchery of the sexual faculty.' (Murray, Literature and Censorship, 14 Books on Trial, 393, 394; *see also*, Lockhart and McClure, Censorship of Obscenity: The De-

---

[22] For violation of Sec. 1141 of the Penal Law, in pertinent part, reading as follows: "1. A person who . . . has in his possession with intent to sell, lend, distribute . . . any obscene, lewd, lascivious, filthy, indecent, sadistic, masochistic or disgusting book . . . or who . . . prints, utters, publishes, or in any manner manufactures, or prepares any such book . . . or who

"2. In any manner, hires, employs, uses or permits any person to do or assist in doing any act or thing mentioned in this section, or any of them,

"Is guilty of a misdemeanor . . .

"4. The possession by any person of six or more identical or similar articles coming within the provisions of subdivision one of this section is presumptive evidence of a violation of this section."

[23] *Mishkin v. New York, supra*, footnote 18.

veloping Constitutional Standards, 45 Minn. L. Rev. 5, 65.)" [24]

This "hard core pornography" test has been described as most clearly indicating what may be considered to be obscene because ". . . it does describe something that most judges and others will 'know . . . when [they] see it' . . . and that leaves the smallest room for disagreement . . . ." [25]

For the purpose of this appeal, it is enough to observe that no issue is raised as to the obscenity in fact of the materials seized under the *Roth* test, the hard core pornography test or any definition of constitutionally unprotected obscenity. It is enough here to mention that the words, "lewd, obscene and indecent," in any event must be interpreted to include only materials that are outside the constitutional protection. We hold the materials here involved to be concededly obscene under either the *Roth* test or hard core pornography test. This being the situation, we find that the Wisconsin contraband statute, so limited to a constitutionally permitted test as to the fact of obscenity, provides reasonable standards for judicial determination of whether seized materials were obscene within the meaning of the statute.

### Suppress and Return?

Appellant's further contention is that since the search warrant under which the property involved was seized was later declared to be invalid and the criminal complaint dismissed, he is, by that fact alone, entitled to the return of the property seized. We do not think so. This

---

[24] *People v. Richmond County News* (1961), 9 N. Y. 2d 578, 587, 175 N. E. 2d 681. Cited in *Mishkin v. New York, supra,* footnote 18, at pages 506, 507, footnote 4.

[25] J. HARLAN, dissenting opinion, *Memoirs v. Massachusetts, supra,* footnote 21, at page 457.

argument, without naming the statute involved, challenges sec. 963.025, providing that, if a motion to suppress evidence is granted, property seized shall not be returned if it is "subject to confiscation." If the evidence is suppressed, must the seized property be returned in all situations?

Motions for the suppression of evidence and for the return of seized property are often made together. However, they are separate, at least separable, motions. If the motion to suppress evidence is granted, it does not follow that the motion to return seized property must in all cases be granted. If the property involved is properly found to be contraband, and the contraband statute is found to be constitutionally valid, the property need not be returned.[26] Solely to establish that the right to suppress evidence does not necessarily include the right to return of property in possession of the state, we quote cases involving various types of contraband, to wit: alcohol and distillery equipment,[27] narcotics,[28] and illegal furs.[29] The point made is that the law of contra-

[26] ". . . the suppression of evidence does not in itself necessarily entitle the aggrieved person to its return (as, for example, contraband) . . . ." *Warden v. Hayden* (1967), 387 U. S. 294, 307, 87 Sup. Ct. 1642, 18 L. Ed. 2d 782. *See also* 79 C. J. S., *Searches and Seizures*, p. 913, sec. 92.

[27] "It follows that it was error to refuse petitioner's motion to exclude and suppress the property which was improperly seized. But since this property was contraband, they have no right to have it returned to them." *Trupiano v. United States* (1948), 334 U. S. 699, 710, 68 Sup. Ct. 1229, 92 L. Ed. 1663.

[28] "Since the evidence illegally seized was contraband the respondent was not entitled to have it returned to him. It being his property, for purposes of the exclusionary rule, he was entitled on motion to have it suppressed as evidence on his trial." *United States v. Jeffers* (1951), 342 U. S. 48, 54, 72 Sup. Ct. 93, 96 L. Ed. 59.

[29] "There is nothing in such constitutional provisions that requires a court to perform the ridiculous act of ordering the return of contraband to a citizen. When evidence illegally obtained is

band governs the right to return of property, not the law of search and seizure. In the area of written or filmed materials, it is additionally true that procedures followed in the determination of contraband nature must be adequate to avoid suppression of constitutionally protected publications.[30]

Under the law of contraband, it is the nature of the property involved that is controlling, not the validity of the search warrant involved. The property here involved might have come into the possession of the state without a search warrant. If a thief by night had broken into the defendant's warehouse and stolen the three cameras and 70 films, upon his arrest the stolen goods would properly be held in custody of the state as evidence in the burglary trial. The trial over, conviction or acquittal resulting, the camera would be returned to the defendant but as contraband, the films, if properly found to be obscene by the court, would be destroyed. It is not the manner of acquisition, not the use to which it has been put, but the inherent nature of the materials in possession of the state that can make them subject to confiscation as contraband.

In this situation, we believe that the "fruit of a poisoned tree" concept does not apply. This doctrine applies in the area of admissibility of evidence in a criminal prosecution or a civil proceeding, a part of the law of the rights of persons. Under the law of contraband, it is the

suppressed and when the courts see to it that such evidence is in no manner used in a criminal prosecution brought against the person whose constitutional rights have been invaded, his rights are completely vindicated." *State ex rel. Meyer v. Keeler* (1931), 205 Wis. 175, 185, 236 N. W. 561.

[30] "We believe that Missouri's procedures as applied in this case lacked the safeguards which due process demands to assure nonobscene material the constitutional protection to which it is entitled." *Marcus v. Search Warrant* (1961), 367 U. S. 717, 731, 81 Sup. Ct. 1708, 6 L. Ed. 2d 1127.

nature of the thing itself that controls. If the article is obscene, it may be destroyed as contraband.[31]

### The Public Policy.

If hard core obscenity is not constitutionally protected, and, if suppression of evidence does not ipso facto require the return of seized property, the remaining questions relate to the area of the public policy. Can the state legislature declare obscene materials to be contraband? May it provide that such materials, seized under a search warrant later held to be invalid, be confiscated or destroyed? Obviously, there are limits to what a state may declare to be contraband. In a leading case in this field of law, the United States Supreme Court held that an automobile, even though used in the commission of a crime, could not be confiscated saying:

"There is nothing even remotely criminal in possessing an automobile. It is only the alleged use to which this particular automobile was put that subjects Mr. McGonigle to its possible loss. . . . Furthermore, the return of the automobile to the owner would not subject him to any possible criminal penalties for possession *or* frustrate any public policy concerning automobiles, as automobiles."[32] (Emphasis supplied.)

In the case before us, the requirement of return of admittedly obscene materials would frustrate the public policy of the state of Wisconsin concerning obscenity as obscenity. Confiscation and destruction do implement and carry out that declared public policy. Cases involving the exclusionary rule must be read as limited in pur-

---

[31] No claim is here made that possession of considerable quantities of admittedly obscene materials served any socially justifiable purpose. We do not deal here with possible instances where obscene materials may for limited purposes properly be subject to ownership rights.

[32] *One 1958 Plymouth Sedan v. Pennsylvania* (1965), 380 U. S. 693, 699, 85 Sup. Ct. 1246, 14 L. Ed. 2d 170.

pose and effect to the suppression of evidence against a defendant in a trial. The law of contraband derives from the inherent nature of a thing or article. Short of constitutional prohibitions, it is the nature of the beast that makes it subject or not subject to being declared contraband.

Under its police powers, as a matter of public policy, the legislature may declare to be contraband property that menaces the public health, safety and morals. The right to destroy contraband property includes property such as counterfeit money, diseased cattle, contaminated food and gambling devices. We would sustain the right of the legislature to place obscene materials in this same category. This is not a case of an innocent article put to an illegal use. It is as impossible to separate the conceded obscenity from the films as it would be to separate the contamination from the food or the gambling from the device.

Appellant's counsel contends that, only if an owner can be subjected to criminal penalties for possession, can a particular article be declared contraband. The contention is presented in the alternative: (1) If a state does not have a statute making possession alone a crime, it loses the right to declare obscene materials to be contraband; (2) if a state does have a statute making intentional possession of obscene materials a crime, such statute is constitutionally infirm. While the concept of contraband is an exercise of police power, related to the law of criminal offenses,[33] it does not depend upon the existence of

---

[33] In a case holding that the government may seize evidence simply for the purpose of proving crime, holding that the requirement that the government assert in addition some property interest in material it seizes to be a fiction, the court stated: ". . . contraband is indeed property in which the Government holds a superior interest, but only because the Government decides to vest such an interest in itself. And while there may be limits to what may be declared contraband, the concept is hardly more than a form through which the Government seeks to prevent and deter crime." *Warden v. Hayden, supra,* footnote 26, at page 306.

a criminal statute making possession itself a crime. It is not the nature of the criminal charges brought against the possessor that makes it subject to being declared contraband.

In the case before us, appellant had been charged with two offenses: Intentionally having in his possession for sale or exhibition, lewd, obscene and indecent written matters, pictures and motion picture films (sec. 944.21 (1) (a), Stats.), and intentionally having in his possession lewd, obscene and indecent motion picture films (sec. 944.21 (1) (b)). Both charges were dropped, both cases dismissed. It is not these statutes that are before us for review. The situation would be the same if the search warrant had been issued for burglary, robbery or auto theft, and the identical items had come into the possession of the state as evidence for the trial of such charges. Where the items were in fact contraband, properly found so to be by judicial determination in adversary proceedings, timely conducted, offending no constitutional safeguards, they would be subject to confiscation rather than return. On the broad question of public policy involved, we find reasonable the legislature's determination that the public interest in the control, suppression and regulation of obscenity require the designation of such obscenity as contraband.

Appellant's brief stresses future hazards more than present equities. For example, it is predicted, "As a book cannot be judged by the cover, no one can obtain an unfamiliar one without being in danger of possessing contraband. As the scienter requirement is not great, he would upon reading it be in jeopardy of being a criminal." As a matter of fact, the proof of scienter in criminal obscenity prosecutions is very important ". . . to avoid the hazard of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity." [34] That issue is not raised

[34] *Mishkin v. New York* (1965), *supra*, footnote 18, at page 511.

here. It has not been argued either that appellant did not know the character of the stag movies, films and comic books in his warehouse, nor that he possessed the seventy movies, two prints of some, for personal viewing. We are called upon only to review the overall validity of the statutes involved and their application to a situation in which the fact of obscenity is admitted. When different questions are presented or different fact situations involved, it will be time enough to pass upon them.

On the fact situation here presented and the issues here raised, we see no reason to leave the reasoning or result of an earlier decision by this court:

"It seems very clear to us that when contraband articles . . . to which no one can have a property right, are found in an illegal search, they should not be returned to the persons from whom they were taken." [35]

*By the Court.*—Order affirmed.

---

[35] *State ex rel. Meyer v. Keeler* (1931), 205 Wis. 175, 184, 236 N. W. 561.