STATE EX REL. GALL, Respondent, v. WITTIG, Municipal Justice of the Village of Whitefish Bay, Appellant.

*No. 218. Argued April 3, 1969.—Decided May 9, 1969.*
(Also reported in 167 N. W. 2d 577.)

596

For the appellant there were briefs by *Harry J. Hayes,* attorney, and *Maxwell H. Herriott,* special counsel, both of Milwaukee, and oral argument by *Mr. Herriott.*

For the respondent there was a brief by *Shellow, Shellow & Coffey* and *Robert H. Friebert,* all of Milwaukee, and oral argument by *Mr. Friebert.*

BEILFUSS, J. From the briefs and arguments of counsel for the parties we deem the issues to be:

1. Is prohibition a permissible and proper remedy?

2. Does the ordinance, by its terms, exclude the proposed activities of the respondent?

3. Is the ordinance as applied to the respondent constitutional?

The propriety of the proceeding by writ of prohibition is not seriously contested by the appellant. In his reply brief the appellant, in response to respondent's claim that prohibition is an appropriate remedy, states, "We

do not challenge this contention." The appellant does, however, insist that there are other adequate remedies such as mandamus to the chief of police requiring him to issue the permit, trial of the alleged ordinance violation, and declaratory judgment to challenge the constitutional validity of the ordinance.

In *State ex rel. Gaynon v. Krueger* (1966), 31 Wis. 2d 609, 614, 143 N. W. 2d 437, the court stated:

"Traditionally, this writ was used to keep an inferior court from acting outside its jurisdiction when there was no adequate remedy by appeal or otherwise. *State ex rel. Mitchell v. Superior Court* (1961), 14 Wis. (2d) 77, 109 N. W. (2d) 522; *State ex rel. Kiekhaefer v. Anderson* (1958), 4 Wis. (2d) 485, 90 N. W. (2d) 790; *State ex rel. Peterson v. County Court* (1961), 13 Wis. (2d) 37, 108 N. W. (2d) 146; *State ex rel. Fieldhack v. Gregorski* (1956), 272 Wis. 570, 76 N. W. (2d) 382. But, as pointed out in *Drugsvold v. Small Claims Court* (1961), 13 Wis. (2d) 228, 108 N. W. (2d) 648, the writ has been expanded to cover cases of 'nonjurisdictional error when the appeal may come too late for effective redress, or be inadequate and there is need for such intervention to avoid grave hardship or a complete denial of the rights of a litigant.' "

The respondent contends that prohibition is appropriate, and the only adequate remedy here, because it is the most effective remedy to prevent interference with his alleged constitutional right of freedom of the press without censorship. In addition, it permits a speedy determination of that right and avoids delays of trial of the alleged violation and possible appeal.

Because the respondent has demurred to the return of the appellant-municipal justice, the findings of the police chief (made a part of the return), are not in dispute. For the purpose of this proceeding, the respondent Gall concedes the chief of police was of the opinion that designated issues of KALEIDOSCOPE contained obscene matter. He does contend, however, that the ordinance which gives the chief of police this sole

right is unconstitutional and that he is entitled to an adequate and speedy determination of that issue.

The constitutional issue could be determined by the procedures suggested by the appellant but because he does not challenge the appropriateness of prohibition we will reach the issues on their merits, reserving for future determination whether a litigant in the position of the respondent is entitled to the remedy of prohibition as a matter of right in a like situation.

The respondent Gall contends the transient merchant ordinance in question, by its own terms, excludes his activities in Whitefish Bay. Gall, by his letter and application for the permit, identified himself as the circulation manager of KALEIDOSCOPE and sought a permit for six persons to sell the publication on the streets in Whitefish Bay.

Sec. 15.07 "(2) WHO NOT INCLUDED. (a) This section shall not be held to include the acts of persons selling services, goods or materials at wholesale to dealers in such articles, nor to newsboys, vendors of dairy products, fruit juices, bakery goods, groceries or ice products to any regular customers on established routes, nor the acts of the local area merchants or their employees in delivering such goods, in the regular course of business, nor shall this section be held to include or apply to any farmer or truck gardener who shall vend, sell or dispose of, or offer to sell, vend or dispose of the products of the farm or garden occupied and cultivated by him, nor governmental agents in the performance of their official duties."

It is argued that the reference to newsboys means any newsboys regardless of whether they sell "to any regular customers on established routes." The respondent interprets the section to read: ". . . nor to newsboys, [nor to] vendors . . . [who sell] to any regular customers on established routes."

The ordinance is unambiguous and does not permit the construction given to it by the respondent. The ordi-

nance creates exceptions based on the nature of the transaction or on the parties involved and it does so by establishing separate categories, which are: (1) sales by wholesalers to dealers; (2) sales to customers on established routes; (3) delivery by local merchants in the regular course of business; (4) sales by farmers and truck gardeners of their own grown products; and (5) governmental agents. Each category save the first is begun with "nor." It asks too much to say, as does the respondent, that a "nor" was inadvertently left out between "newsboys" and "vendors."

The overall pattern of the ordinance is to except those who do not sell to the public or those who sell or deliver on a permanent or regular basis in established patterns. It appears, therefore, that newsboys are not excluded unless they sell or deliver to regular customers on established routes.

Appellant asserts that the village Transient Merchant Ordinance is a valid delegation of authority to the chief of police.

The respondent contends the ordinance (sec. 15.07) is unconstitutional if it applies to any publication for the reason it violates the first and fourteenth amendments to the United States Constitution, and art. I, sec. 3 of the Wisconsin Constitution, both on its face and as applied.

It can confidently be said, without citation of authority, that the rights of freedom of speech and freedom of the press as provided for in the first amendment of the United States Constitution cannot be abridged by any state or subdivision thereof by virtue of the fourteenth amendment. The same rights are extended even more explicitly by art. I, sec. 3 of the Wisconsin Constitution:

"Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge the liberty of speech or of the press. . . ."

The ordinance, of course, was not designed as an anti-obscenity ordinance nor as a censorship ordinance. It is what its title says it is—a transient merchant ordinance. It delegates and directs the chief of police to investigate the business and moral character of the applicant for a transient merchant's permit as he deems necessary for the public good and then issue or deny the permit in accordance with his findings.

The regulations placed on a permit-holder are that he not misrepresent his product, or the nature of his visit, sell unwholesome food, sell after the expiration or revocation of his permit, and keep the area free from dirt and insects.

In denying the permit the chief of police found that some of the past issues of KALEIDOSCOPE contained obscene matter and would likely contain such matter in the future. He has, in effect, censored the publication and prohibited future sales of issues not yet published on the streets of Whitefish Bay.

The freedom of speech and freedom of press are two of our most jealously guarded and basic constitutional rights. Throughout the years, especially the last few years, the cases decided by the courts of this country, particularly the United States Supreme Court, have steadfastly proclaimed these rights cannot be infringed. However, "Liberty of speech, and of the press, is also not an absolute right, and the State may punish its abuse." [1]

The appellant correctly points out that the sale of obscene matter is a recognized abuse of the right and is not protected by either our federal or state constitutions. [2]

---

[1] *Near v. Minnesota* (1931), 283 U. S. 697, 708, 51 Sup. Ct. 625, 75 L. Ed. 1357.

[2] *State v. Voshart* (1968), 39 Wis. 2d 419, 159 N. W. 2d 1; *State v. Chobot* (1960), 12 Wis. 2d 110, 106 N. W. 2d 286; *Ginsberg v. New York* (1968), 390 U. S. 629, 88 Sup. Ct. 1274, 20 L. Ed. 2d 195; *Roth v. United States* (1957), 354 U. S. 476, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498.

The issues of this case in its present posture do not encompass a determination of whether the identified issues of KALEIDOSCOPE contained obscene matter. Our concern must be limited to whether the method provided for by the ordinance and used by the village is constitutionally permissible to prevent the distribution of KALEIDOSCOPE.

A first problem raised by the appellant is the contention that the first amendment does not prohibit regulation by ordinance of the business of soliciting the sale of or the sale of periodicals by a local transient merchant and cites as authority *Breard v. Alexandria* (1951), 341 U. S. 622, 71 Sup. Ct. 920, 95 L. Ed. 1233.

In *Breard* a local ordinance prohibited house-to-house solicitation for the sale of goods or wares without prior consent of the owners. A magazine circulation agency, selling among other magazines, The Saturday Evening Post, challenged the constitutional validity of the ordinance as an infringement on free press. The ordinance was upheld upon the ground that it was a reasonable and valid restriction to protect the privacy of the citizens of the community. The court pointed out that it was not an unreasonable restriction upon circulation; conventional means to advertise and sell their magazines such as radio, press, mail and local agencies were still available to provide for circulation. The circulation of the magazine was not restricted because of what it contained, nor was circulation prohibited in any manner other than deemed by the community to be obnoxious and an affront to privacy. Such is not the situation here. Gall is denied the right to sell or circulate his newspaper not because of the manner in which he sells the paper but because of what the paper contains. *Breard* was a reasonable regulation of distribution or circulation, this case is censorship.

We now reach the question of whether censorship or prior restraint of press publications can constitutionally be permitted.

In *Near v. Minnesota, supra,* the United States Supreme Court stated at pages 713, 714:

" 'The liberty of the press is indeed essential to the nature of a free state; but this consists in laying no *previous* restraints upon publications, and not in freedom from censure for criminal matter when published. Every freeman has an undoubted right to lay what sentiments he pleases before the public; to forbid this, is to destroy the freedom of the press; but if he publishes what is improper, mischievous or illegal, he must take the consequence of his own temerity.' 4 Bl. Com. 151, 152; . . .''

A multitude of cases have come before the courts in the past few years dealing with the problem of censorship and prior restraint. As a generalization it can be said that some degree of censorship and prior restraint can be exercised, but any chilling effect upon freedom of the press or speech is regarded with suspicion and the censor has an affirmative heavy burden of judicially establishing that the censored materials are unprotected and must do so with great dispatch.

In *Freedman v. Maryland* (1965), 380 U. S. 51, 58, 59, 85 Sup. Ct. 734, 13 L. Ed. 2d 649, the following guidelines appear:

"Applying the settled rule of our cases, we hold that a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. First, the burden of proving that the film is unprotected expression must rest on the censor. As we said in *Speiser v. Randall,* 357 U. S. 513, 526, 'Where the transcendent value of speech is involved, due process certainly requires . . . that the State bear the burden of persuasion to show that the appellants engaged in criminal speech.' Second, while the State may require advance submission

of all films, in order to proceed effectively to bar all showings of unprotected films, the requirement cannot be administered in a manner which would lend an effect of finality to the censor's determination whether a film constitutes protected expression. The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint. See *Bantam Books, Inc. v. Sullivan, supra; A Quantity of Books v. Kansas,* 378 U. S. 205; *Marcus v. Search Warrant, supra; Manual Enterprises, Inc. v. Day,* 370 U. S. 478, 518–519. To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. Moreover, we are well aware that, even after expiration of a temporary restraint, an administrative refusal to license, signifying the censor's view that the film is unprotected, may have a discouraging effect on the exhibitor. See *Bantam Books, Inc. v. Sullivan, supra.* Therefore, the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license."

Additional pertinent quotations are:

"It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official— is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." *Staub v. Baxley* (1958), 355 U. S. 313, 322, 78 Sup. Ct. 277, 2 L. Ed. 2d 302.

"What Rhode Island has done, in fact, has been to subject the distribution of publications to a system of prior administrative restraints, since the Commission is

not a judicial body and its decisions to list particular publications as objectionable do not follow judicial determinations that such publications may lawfully be banned. Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan* (1963), 372 U. S. 58, 70, 83 Sup. Ct. 631, 9 L. Ed. 2d 584.

Upon the basis of the established law we must hold the ordinance in question as applied in this instance does result in censorship and prior restraint without constitutionally decreed safeguards.

The ordinance, as applied, delegates to an executive or administrative official the right and duty to censor publications without affirmative judicial review and without semblance of standards or definition of what is prohibited. Here, in effect, there was not only a determination that existing publications contained obscenity without constitutional safeguard but, in addition, a determination that future publications would contain such material. The ordinance as applied is unconstitutional.

As aptly pointed out by the trial court in its memorandum:

"Although the licensing provision is unconstitutional, society does not go unprotected against the distribution of obscene literature. The state law clearly provides for the seizure of lewd, obscene or indecent written material in Chapter 963. A special declaratory judgment statute enacted in 1961 enables the District Attorney to proceed against any book, magazine or other written matter in order to enjoin its distribution. Finally, 944.21, Wis. Stats., makes it a felony punishable by $5,000.00 or five years, or both, to sell or publish any lewd, obscene or indecent written matter. These are the proper legal routes to resolve the burning issue as to whether Kaleidoscope should be permitted to be sold or published in this community."

*By the Court.*—Order and judgment affirmed.

ROBERT W. HANSEN, J. (*dissenting*). The majority opinion upholds the issuance of a writ of prohibition in restraining a municipal justice from proceeding in a case involving the village's transient merchants' or peddlers' ordinance. It does so despite its finding that the primary issue raised "could be determined by the procedure suggested by the appellant," to wit: mandamus to the chief of police requiring him to issue the permit, trial of the alleged ordinance violation and declaratory judgment to challenge the constitutional validity of the ordinance. To which we would add only the availability of a trial de novo in the circuit court on appeal of any judgment entered in the justice court.

Actually, the question of whether prohibition is available as a matter of right to defendants in justice courts in village ordinance cases is not to be reserved as the majority suggests. It has been decided in a case to which this dissenting opinion will refer more than once.[1] We should not infer now that this short-cut route may never be traversable again, when we said earlier that, except in cases of extraordinary hardship, it was being closed to all justice court traffic.

The majority opinion does put up at least a "Slow. Proceed With Caution" warning, perhaps even a "Stop. End of Road" sign to the use of the extraordinary remedy of prohibition in the justice court area. It reserves ". . . for future determination whether a litigant in the position of the respondent is entitled to the remedy of prohibition as a matter of right in a like situation."

In determining if or when prohibition lies to stop actions in a justice court that seeks enforcement of village ordinances, we deal with art. VII, sec. 8 of the Wisconsin Constitution which grants to the circuit courts "supervisory control" over "inferior courts" and the right to

---

[1] *State ex rel. Kiekhaefer v. Anderson* (1958), 4 Wis. 2d 485, 90 N. W. 2d 790.

issue writs "necessary . . . to give them a general control over inferior courts." A thorough discussion of this power and the manner in which it is to be exercised appears in an early case.[2] It makes clear that such supervisory power of circuit courts ". . . is fenced about, so to speak, by the functions, in the aggregate, of the ancient writs used to exercise it prior to the constitution, and preserved thereby for the same purpose."[3] Such ancient writs were stated to be those of prohibition, mandamus and certiorari.

In the case before us it could be said as was said in the *Kiekhaefer Case,* "The fundamental issue presented on this appeal is whether this is a proper case in which to have invoked the extraordinary remedy of resort to a writ of prohibition."[4] In *Kiekhaefer,* the parties primarily debated as to whether prohibition may be invoked against a judge of a lower court except in a situation where the judge is exceeding his jurisdiction. This court held that prohibition may be invoked in case of nonjurisdictional error "in a situation where appeal from the judgment would come too late for effective redress and great hardship would result if such writ were not issued."[5] However, the court went beyond the limited issue stressed by litigants and set down two limiting requirements governing circuit judges issuing writs of prohibition against inferior courts, particularly village or municipal justices:

(1) "In order to entitle a party to a writ of prohibition, the results of the error attacked must not only be prejudicial to him, but must involve *extraordinary hardship.* [Citations omitted.]" (Emphasis in the original.)[6]

---

[2] *State ex rel. Milwaukee Medical College v. Chittenden* (1906), 127 Wis. 468, 107 N. W. 500.

[3] *Id.* at page 512.

[4] *Kiekhaefer v. Anderson* (1958), *supra,* at page 488.

[5] *Id.* at page 490.

[6] *Id.* at page 490.

(2) "It is a further well-established principle that prohibition will not lie where there is an adequate remedy by appeal (citations omitted)." [7]

We would apply these sound limits to the use of prohibition here as the court did in *Kiekhaefer*. Both cases involve a charged violation of a village ordinance. Both cases involve the right of a municipal justice to proceed to hear a charge of violation of such village ordinance. In both cases, the defendant has the right to a trial de novo in the circuit court if he is found guilty in the justice court. In *Kiekhaefer* this court found such right to a trial de novo to be an adequate remedy at law, thus barring the right of a defendant to seek and secure a writ of prohibition against the municipal justice.

The position of respondent that a writ of prohibition is preferable to appeal is based solely on the argument that litigation can be protracted. This is true enough, although not so likely at the village justice court level. However, it remains in the realm of possibility, not probability, in the absence of any affidavits that support the naked assertion. Where there is no more than the relator's claim that "The ordinance is inapplicable to him, or, if applicable, is unconstitutional" coupled with a claim that litigation "could be protracted" this does not justify his seeking and securing a writ of prohibition against justice court proceedings. Something more is needed to establish the required "extraordinary hardship" or "inadequacy" of alternatives. The importance of the issue involved is not such additional factor because prohibition is not to be used solely to establish a governing guideline for future cases of the same type. [8]

---

[7] *Id.* at page 491.

[8] *See Drugsvold v. Small Claims Court* (1960), 13 Wis. 2d 228, 108 N. W. 2d 648, quoting with approval from 42 Am. Jur., *Prohibition*, p. 141, sec. 6: "Nor will a court issue prohibition in a case where it is not justified, for the sole purpose of establishing a principle to govern other cases." *See also State ex rel. Kowaleski*

The defendant has an adequate remedy in law were he to be found guilty of violating the village ordinance by the village justice. That remedy is the trial de novo in the circuit court to which he is entitled on appeal. That there may be reasons why the relator may well prefer prohibition to such appeal and trial de novo or other alternative remedies does not make appeal or such alternatives "inadequate remedies" nor constitute a showing of "extraordinary hardship." If a trial de novo—a starting over with the slate wiped clean—is not an adequate remedy against any imperfection in a municipal justice court proceeding, the word "adequate" is being given a new and strange meaning.

It is important to keep in mind the type of appeal assured defendants in cases involving the charge of violating a village ordinance after trial by a municipal justice. Sec. 306.17, Stats., provides for a trial de novo in appeals from justice courts in all civil cases. From an early date, such trial de novo has been assured appellants on appeals to the circuit court from justice courts in all criminal cases.[9]

Does such right on appeal to the circuit court from any adverse judgment Municipal Justice Lawrence M. Wittig may enter against defendant, with a trial de novo, provide the relator, Dennis M. Gall, with an adequate remedy, assuming that such judgment was claimed to be procedurally, jurisdictionally or constitutionally imperfect? We believe that it does, if relator be admitted to bail pending trial of the appeal.[10]

---

*v. District Court* (1949), 254 Wis. 363, 372, 36 N. W. 2d 419, stating: " 'Prohibition . . . should be issued only in cases of extreme necessity . . . Nor will a court issue prohibition . . . for the sole purpose of establishing a principle to govern other cases. Nor will it ordinarily be issued in a doubtful case.' "

[9] *Kiekhaefer, supra,* page 491 and cases cited therein.

[10] This is directly quoted from the *Kiekhaefer Case,* at page 491; the court there saying: "Does the right of appeal to the circuit court from any adverse judgment Justice of the Peace Neuser may enter against defendant, with a trial there *de novo,*

Where a circuit judge has issued a writ of prohibition against a municipal justice barring further proceedings in a case including violation of a village ordinance we would hold, to quote *Kiekhaefer* "It is, therefore, our determination that the writ should not have been issued for the twofold reason that there was no showing of undue hardship, and appeal provided an adequate remedy." [11]

So we would conclude that the writ of prohibition should not here have been issued and would reverse and remand with directions to enter a writ of consultation authorizing the defendant municipal justice to proceed in the original ordinance violation action as if no writ of prohibition had been issued exactly as was done in the *Kiekhaefer Case*.

I am authorized to state that Mr. Justice LEO B. HANLEY joins in this dissent.

provide the relator Kiekhaefer with an adequate remedy, assuming that the defendant committed error . . . ? We believe that it does if relator be admitted to bail pending trial of the appeal. [Citation omitted.]" This language was quoted with approval in *State ex rel. Beaudry v. Panosian* (1967), 35 Wis. 2d 418, 423, 151 N. W. 2d 48.

