STATE EX REL. HOWARD and another, Petitioners, v. O'CONNELL, Circuit Judge, Respondent.

*Argued September 7, 1971.—Decided December 14, 1971.*
(Also reported in 192 N. W. 2d 201.)

For the petitioners there was a brief by *Shellow & Shellow* and *James A. Walrath,* all of Milwaukee, and oral argument by *Mr. Walrath.*

For the respondent there was a brief by *E. Michael McCann,* district attorney of Milwaukee county, and *Victor Manian,* deputy district attorney, and oral argument by *Mr. Manian.*

A brief amicus curiae was filed by *Jay Schwartz* of Racine, and *John J. Valenti* of Milwaukee.

HALLOWS, C. J.   On August 16, 1971, Delbert Hamburger, a Milwaukee vice-squad police officer, filed a "petition for an order to show cause" supported by an affidavit of another police officer and one by a clerk in the Denmark Book Store, Milwaukee. The petitioner alleged that on August 10 and 13, 1971, he purchased from the Denmark Book Store 23 magazines which he identified by title, volume, number and description of contents. These magazines were purchased by the Denmark Book Store from Castle and other copies of the magazines were alleged to be in the possession of Castle for commercial distribution to retail book stores. It is alleged the magazines consisted of photographs of nude and semi-nude adult men and women in poses emphasizing their exposed genital parts and engaging in acts of sodomy and unnatural sex behavior. It is alleged the magazines were obscene in a constitutional sense and the commercial sale thereof was unlawful within the meaning of sec. 944.21 (1) (a), Stats.[1] Copies of the magazines were submitted with the petition. The petition prayed for

---

[1] "944.21 **Lewd, obscene or indecent matter, pictures and performances.** (1) Whoever intentionally does any of the following may be fined not more than $5,000 or imprisoned not more than 5 years or both:

"(a) Imports, prints, advertises, sells, has in his possession for sale, or publishes, exhibits, or transfers commercially any lewd, obscene or indecent written matter, picture, sound recording, or film; or . . ."

an order to show cause why a search warrant should not issue to search the distribution center of Castle and to seize all copies of magazines referred to. The petition also requested a temporary injunction prohibiting Castle from disposing, destroying or concealing copies of the designated magazines and in order to effectuate such restraining order that Castle be ordered to allow two police officers to remain on the premises of Castle until a determination was made at an adversary hearing whether probable cause existed for the issuance of the search warrant.

The circuit court, after examining the magazines and finding probable cause of their obscenity, entered an *ex parte* order to show cause in conformity with the prayer of the petition and gave notice to the petitioners that an adversary hearing would be conducted the following day, August 17, 1971, on the question of why a search warrant should not issue for the seizure of all the copies of said magazines pursuant to secs. 968.10, 968.12 and 968.13, Stats.[2] The order to show cause, besides pro-

---

[2] "968.10 Searches and seizures; when authorized. A search of a person, object or place may be made and things may be seized when the search is made:

". . .

"(3) Pursuant to a valid search warrant; . . ."

"968.12 Search warrant; defined; issuance. (1) A search warrant is an order signed by a judge directing a law enforcement officer to conduct a search of a designated person, a designated object or a designated place for the purpose of seizing designated property or kinds of property, and to deliver any property so seized to the clerk designated in the warrant. A judge shall issue a search warrant if probable cause is shown. The warrant shall be based upon sworn complaint or affidavit, or testimony recorded by a phonographic reporter, showing probable cause therefor. The complaint, affidavit or testimony may be upon information and belief. . . ."

"968.13 Search warrant; property subject to seizure. A search warrant may authorize the seizure of the following:

hibiting Castle from concealing and destroying copies of the magazines and allowing two police officers to remain on the premises, also ordered Castle to permit the police officers to examine containers being shipped out of the premises to determine whether or not the prohibition against concealment and destruction was being violated.

On August 17th the petitioners appeared specially and objected to the jurisdiction of the court and also filed a motion to dismiss the proceedings. The court denied the motion. An agreement was then reached that Castle would turn over to the police all copies of the magazines in its possession and the state agreed to withdraw the police officers. The court approved the agreement and as a result more than 3,000 copies of the magazines were surrendered to the police. The adversary hearing was adjourned to August 31st and on that date again adjourned so that Castle could petition this court for a writ of prohibition and thereby test the validity of the proceedings.

This case thus presents itself as a test case of a new procedure fashioned by the circuit court in the state's battle against obscene material. The state argues the case raises two issues: (1) Whether an adversary hearing prior to the issuance of a search warrant to seize allegedly obscene material is necessary; and (2) whether the method herein employed for such purposes is lawful. The petitioners argue that constitutional requirements of due process and of the first amendment require a prior adversary, judicially supervised hearing before the seizure of allegedly obscene publications. The

"(1) Contraband, which includes without limitation because of enumeration lottery tickets, gambling machines or other gambling devices, lewd, obscene or indecent written matter, pictures, sound recordings or motion picture films, forged money or written instruments and the tools, dies, machines or materials for making them, and narcotic drugs and the implements for smoking or injecting them."

petitioners then argue that the statutes relating to search warrants do not authorize an adversary hearing and the issuance of a restraining order and the circuit court does not have any inherent power to so proceed. It is also argued the state's procedure denies due process and the rights of free speech to the petitioners because there are no rules promulgated for the conduct of such a hearing. The position of the amicus curiae is substantially the same as the petitioners but applied to the seizure of allegedly obscene movie films.

We do not accept the premise that an adversary hearing must be held in all cases before allegedly obscene publications can be seized under a search warrant. To admit this would shift our inquiry from the primary question to that of the validity of the procedure. Whether an adversary hearing is necessary depends upon the purpose and effect of the search and seizure. A search and seizure is not an end in itself but is auxiliary to some action or proceeding in court. In the case of obscenity, the action or proceeding must be either against the person involved to enforce the criminal law or a civil in rem proceeding against the obscene publication seeking its destruction as contraband as provided by sec. 269.565, Stats. As an auxiliary tool to criminal law enforcement, the warrant for search and seizure must be reasonable in time, place, content and scope and these elements are determined in each case by the circumstances.

Here, no claim is made that the state is proceeding in rem under sec. 269.565, Stats. The petition alleges the sale of the magazines to be contrary to sec. 944.21 (1) (a), which is a criminal statute making it a felony for anyone to intentionally sell or to have in his possession for sale obscene material. The procedure is stated in the court order to be ancillary to secs. 968.10, 968.12, and 968.13, relating to search warrants and it is claimed by the state to be necessary to protect the rights of the petitioners under those sections.

The requirement of an adversary hearing in obscenity cases was first considered in *Kingsley Books, Inc. v. Brown* (1957), 354 U. S. 436, 77 Sup. Ct. 1325, 1 L. Ed. 2d 1469, in relation to a statute in New York which placed the publication on trial and provided for an in rem action against the objectionable publication with a view to the destruction of all the seized copies. An injunction pendente lite was authorized but the issue of obscenity was required to be promptly tried and adjudicated in an adversary proceeding for which an adequate notice, judicial hearing, and a fair determination was assured. The court held this limited injunction was not a prior censorship of a literary product and was not violative of freedom of speech. The procedure was considered "a brake on the temptation to exploit a filthy business offered by the limited hazards of piecemeal prosecutions, sale by sale, of a publication already condemned as obscene." The court stated at page 444, "Section 22-a's provision for the seizure and destruction of the instruments of ascertained wrongdoing expresses resort to a legal remedy sanctioned by the long history of Anglo-American law." This case is no authority for the necessity of the procedure adopted in the instant case.

Both parties rely on *Marcus v. Search Warrant* (1961), 367 U. S. 717, 81 Sup. Ct. 1708, 6 L. Ed. 2d 1127. But here again an in rem statute of the state (Missouri) was under consideration. This section provided for the issuance of a search warrant on probable cause without an adversary hearing; obscene material was declared contraband and subject to seizure. Provision was made for a hearing within five to twenty days to determine whether the seized property was obscene and notice given publicly and to the owner of the property. Upon a determination the seized property is obscene, the court is authorized to order it destroyed unless needed as evidence in a criminal prosecution. The United States Su-

preme Court thought the Missouri procedure as applied in that case lacked the safeguards [3] which due process demanded to assure nonobscene material the constitutional protection to which it was entitled. *Kingsley* was distinguished as a case of "limited injunctional remedy" under closely defined procedural safeguards rather than a scheme which in operation inhibited the circulation of publication indiscriminately because of the absence of such safeguards. Thus *Marcus* did not hold or require a prior adversary hearing to gather evidence for a criminal prosecution.

The parties rely on *A Quantity of Books v. Kansas* (1964), 378 U. S. 205, 84 Sup. Ct. 1723, 12 L. Ed. 2d 809, which involved an in rem Kansas statute and a seizure of obscene books pending a hearing. The petition named 59 novels, annexed copies of seven of them with pages marked although the statute did not require it. An *ex parte* hearing was had although not statutorily required. The trial court ordered all copies of the books seized and upon adversary hearing found 31 novels represented by 1,715 copies to be obscene and ordered them destroyed. The United States Supreme Court held the procedure for the issuing of the warrant for the seizure of the books and authorizing them impounded pending an adversary hearing was constitutionally insufficient because an *ex parte* hearing did not adequately safeguard against the suppression of nonobscene books.

The basic object and purpose of the constitutional requirement for an adversary hearing is to determine in the first instance obscenity in order to safeguard nonobscene material and prevent a seizure from constituting a prior restraint on material constitutionally entitled

---

[3] The warrant gave broad discretion to police—the warrant did not specify any particular publication—no guidelines were given to the police for the exercise of informed discretion—180 seized publications were found not obscene—only one third of the publications seized were finally condemned.

to be freely distributed under the right of free speech. While it is true obscene books may be made contraband by statute (*see* sec. 968.13 (1)), seizure of them is governed by rules not applicable to other contraband such as narcotics and gambling paraphernalia because the latter do not represent and are not a part of speech expression. *See Marcus v. Search Warrant, supra.*

Consequently, if a search and seizure of obscene material is made for the purpose of determining the material to be contraband and destroyed and all such material is to be seized, then the current United States Supreme Court cases require a prior adversary hearing to the seizure to protect nonobscene material under the first amendment.

We find no case in the United States Supreme Court even suggesting the necessity for a prior adversary hearing before the issuance of a warrant for seizure of evidentiary samples of obscene publications needed in a criminal prosecution. But we do find authority to the contrary in *Overstock Book Co. v. Barry* (2d Cir. 1970), 436 Fed. 2d 1289. The New York code of procedure, sec. 791, providing for search warrants to secure evidence on an *ex parte* hearing was upheld against constitutional challenge. *Marcus* and *A Quantity of Books* were both distinguished as involving proceedings looking toward the suppression and ultimate destruction of the seized material. However, in *Overstock* the police seized 17,500 books, magazines and other material for evidentiary purposes and the trial court held the seizure invalid as a violation of the first amendment as having a total and immediate effect of suppression and also of violation of the fourth amendment as being unreasonable in respect to the number of books seized.

On the other hand we have *United States v. Wild* (2d Cir. 1969), 422 Fed. 2d 34, recognizing the legitimacy of the seizure of evidentiary samples of colored slides and photographs needed in a criminal prosecution. It

is a false notion that in the field of obscenity all steps in the normal process of criminal law must await the determination of obscenity of evidence in an adversary hearing. *State v. Kois* (1971), 51 Wis. 2d 668, 188 N. W. 2d 467. The seizure of sufficient copies of obscene publications for evidentiary purposes in a criminal case normally will not have a total and immediate suppressing effect upon the selling or distribution of such material and consequently there is no need of an evidentiary hearing to safeguard nonobscene material.

A search and seizure for the purpose of securing a reasonably sufficient amount of material for evidentiary purposes to prove a claim of possessing or selling does not justify the seizure of all material even though the material seized for evidence may after conviction of the possessor or seller be destroyed as contraband. *See* sec. 963.04 (5), Stats. 1967, and sec. 968.20, Stats. 1969. In respect to a movie film seized for an evidentiary purpose in a criminal prosecution, some federal appellate courts have decided that the effect of the execution of a warrant for search and seizure is the same total and immediate suppression as is condemned in *Marcus* and *A Quantity of Books*. *See Bethview Amusement Corp. v. Cahn* (2d Cir. 1969), 416 Fed. 2d 410, certiorari denied (1970), 397 U. S. 920, 90 Sup. Ct. 929, 25 L. Ed. 2d 101; *Astro Cinema Corp., Inc. v. Mackell* (2d Cir. 1970), 422 Fed. 2d 293; *Tyrone, Inc. v. Wilkinson* (4th Cir. 1969), 410 Fed. 2d 639, certiorari denied (1969), 396 U. S. 985, 90 Sup. Ct. 477, 24 L. Ed. 2d 449; *Metzger v. Pearcy* (7th Cir. 1968), 393 Fed. 2d 202.

However, we do not agree that seizure of a movie for evidentiary purposes after an *ex parte* hearing necessarily violates the first amendment. If the theater is in a movie-film distribution-center, another copy of the film can be obtained in a matter of hours and no one would be deprived of seeing the movie. This, of course, would not be true if the seizure took place during the showing

of the film or in a small town where another copy of the film was not available to the exhibitor. Whether a required adversary hearing is required depends upon the facts of each case. An absolute rule to protect one set of rights may often override equally important and counterbalancing rights and we see no reason why in a case where the seizure of a film totally suppresses its viewing for an unreasonable time, the court upon application cannot order the film returned immediately upon the condition the exhibitor would make a copy available within a reasonable time for evidentiary purposes under penalty of contempt of court. In both *Tyrone, Inc.* and *Metzger,* the court ordered the film returned but a copy to be furnished for evidentiary purposes in a criminal case. We hold, therefore, it is not necessary to have a prior adversary hearing for the issuance of a search and seizure warrant for a reasonable amount of obscene publications for evidentiary purposes in a criminal prosecution.

In the instant case, no publications were seized but some 3,000 copies were turned over to the police by agreement. Since the circuit court was without jurisdiction to hold and did not need to hold an adversary hearing for the purpose of securing evidentiary samples, the question arises what should now be done with these copies. In *State v. Voshart* (1968), 39 Wis. 2d 419, 159 N. W. 2d 1, we held obscene material illegally seized was contraband and need not be returned to its owner. The trial court, upon the request for the return of the material, held an adversary hearing to determine whether the illegally seized material was obscene under secs. 963.025 and 963.04 (5), Stats. 1967. Voshart was followed in *State v. Kois, supra.* Although sec. 963.04 (5) is now sec. 968.20 (1), Stats. 1969, which is somewhat different in wording, a court is not required to return property seized pursuant to a search warrant or seized without a search warrant if the material is contraband.

But *Voshart* is to be distinguished from the instant case. In *Voshart* the search and seizure was not constitutionally void because the amount of material seized bore an unreasonable relationship to the evidentiary purpose of the seizure. There was no inference or showing that the seizure for evidentiary purposes was of such an embracing scope as to amount to "a drying up of the source" or its purpose was for an in rem proceeding. No issue was raised that the search and seizure were deliberately unreasonable in order to seize allegedly contraband material and thus amount to a shortcut by the state in its efforts to confiscate obscene material.

If *Voshart* were to apply here or in cases where an unreasonable amount of obscene material is seized for evidentiary purposes in a criminal prosecution, then the state has invented with the help of the trial court a shortcut way of eliminating obscenity by the deliberate use of an illegal search and seizure warrant. *Voshart* is not impaired by this decision but is confined to its facts.

A writ of prohibition should issue to prohibit the proposed adversary hearing for the purpose of issuing a search warrant and the carrying out of the injunctional order of August 16, 1971. The state may keep several copies of each magazine for evidentiary purposes in any criminal case it decides to prosecute against the petitioners. This is in accordance with the spirit of sec. 968.20, Stats.

*By the Court.*—Let a writ of prohibition issue, prohibiting the respondent from continuing the proceedings described in the petition and in the respondent's order of August 16, 1971.