TYRRELL GRAVEL COMPANY, Plaintiff-Appellant, v. DEAN E. CARRADUS *et al.*, Defendants-Appellees.

Second District   No. 2—92—1076

Opinion filed September 13, 1993.

William P. Brady, of Gallagher, Klein & Brady, of De Kalb, for appellant.

Norman H. Racine, of Racine & Racine, of Sycamore, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Tyrrell Gravel Company, sued defendants, Dean and M. Frances Carradus, for a declaratory judgment. Plaintiff sought a declaration that it had a property interest in fish that were contained in man-made bodies of water on real property that plaintiff had conveyed to defendants. The trial court granted summary judgment in defendants' favor on the grounds that (1) the fish were part of the real property; and (2) Tyrrell had abandoned the fish.

For the purposes of this appeal, we take the following allegations in the plaintiff's pleadings as true. On December 30, 1983, plaintiff entered into a deed in lieu of foreclosure with the National Bank and Trust Company of Sycamore (Bank) whereby plaintiff conveyed certain of its property to the Bank. This property contained three man-made lakes, or quarries, which were completely within the property and unconnected to any other bodies of water. Plaintiff had operated a "fee fishing and camping" business on the property. Plaintiff maintained and increased the population of fish in these quarries by stocking them with fish that it had purchased. The fish also reproduced naturally.

On October 17, 1986, defendants purchased the property from the Bank. Thereafter, defendants prohibited plaintiff from removing any fish from the lakes.

Plaintiff sued for a declaration that it had a property interest in the fish and therefore had a right to remove the fish from the property. Plaintiff argues on appeal that the fish were part of its business inventory and that it did not convey the fish to the Bank along with the real property. Plaintiff claims, therefore, that even though defend-

ants own the property, plaintiff still has a property interest in the fish.

Defendants argue, on the other hand, that (1) the fish, as wild animals, are the property of the State; (2) even if the fish are not wild animals, they are part of the real property and were conveyed along with the property itself; and (3) even if Tyrrell could have retained a property interest in the fish after conveying the property to the Bank, Tyrrell abandoned the fish by not attempting to remove them prior to October 17, 1986.

■ Under section 5—5 of the Fish and Aquatic Life Code (Code) (515 ILCS 5/5—5 (West 1992)), all "aquatic life within the boundaries of the State" is the property of the State and the State regulates the "taking, killing, possession, use, sale, and transportation" of such aquatic life. (515 ILCS 5/5—5 (West 1992).) Section 5—5 applies to aquatic life "in or from any of the lakes, rivers, creeks, sloughs, bayous, or other waters or watercourses or lands" in Illinois. (515 ILCS 5/5—10(i) (West 1992).) Section 5—5 provides an exception, however, for aquatic products which are "bred, hatched, propagated, or raised" pursuant to an aquaculture permit issued by the Department of Conservation. 515 ILCS 5/5—5 (West 1992).

Section 5—5 of the Code did not become effective until January 17, 1992. The predecessor to section 5—5 of the Code was section 2.1 of the Fish Code of 1971 (Fish Code) (Ill. Rev. Stat. 1989, ch. 56, par. 2.1). Section 2.1 of the Fish Code did not recognize an exception for aquatic products until the adoption of Public Act 85—856, which became effective on January 1, 1988. Therefore, we need not consider whether the fish in this case are aquatic products exempt from State ownership under section 5—5 of the Code.

Defendants persuasively argue that if the fish were, by statute, the property of the State, then plaintiff could have no property interest in them. As the owner of the property plaintiff may have had fishing rights (515 ILCS 5/5—20 (West 1992)), but these rights terminated when plaintiff relinquished the ownership of the land. *Beckman v. Kreamer* (1867), 43 Ill. 447, 448.

Plaintiff argues, however, that the State does not own the fish in the lakes in question because those lakes are located entirely on private property and they are unconnected to any other bodies of water. Plaintiff's argument is well taken. Section 2.1 of the Fish Code is a reflection of the common-law principle that fish which are *ferae naturae* are the property of the State. We can therefore read section 2.1 with reference to the common law. (2B N. Singer, Sutherland on Statutory Construction §50.01 (5th ed. 1992).) Fish which swim freely are

generally considered the property of the State in whose waters they are located. (*People v. Booth Fisheries Co.* (1912), 253 Ill. 423, 428-29; accord *Washington Kelpers Association v. State* (1972), 81 Wash. 2d 410, 415, 502 P.2d 1170, 1173; 36A C.J.S. *Fish* §2 (1961).) The State owns the fish:

> "not as a proprietor, but in its sovereign capacity, as the representative and for the benefit of all its people in common, and the ownership thereof cannot be claimed by any particular individual. ***
> ***
>
> When a fish has been legally appropriated and reduced to possession, it ceases to be a wild animal in the legal sense. Accordingly, title to fish reduced to one's possession by lawful means is released by the state to the taker; but an individual may acquire only such limited or qualified property interest as the state chooses to permit. ***
>
> The mere fact that a person owns land surrounding water in which there are fish gives him no property in the fish, unless the water is so inclosed as to be absolutely within his control, and the free passage of fish to and from it is entirely and rightfully obstructed. *** If, however, fish escape after being confined, and are found at large in their proper element, they again become public property and subject to appropriation by the first person who takes them." 36A C.J.S. *Fish* §2 (1961).

The State, therefore, can regulate the right of individuals to catch even the fish that have swum onto their property. (35 Am. Jur. 2d *Fish & Game* §1 (1967).) It is the ability of the fish to "roam" to and from other bodies of water that invests the State with such an interest in regulating them. See *United States v. Long Cove Seafood, Inc.* (2d Cir. 1978), 582 F.2d 159, 163-64.

A case which our supreme court decided over 100 years ago is relevant to our analysis here. (*People v. Bridges* (1892), 142 Ill. 30.) In *Bridges*, defendant was accused of violating a statute which prohibited the use of a seine for catching fish, except during certain months of the year. The lake on which defendant fished, with the owner's permission, was entirely surrounded by private property. This lake was only connected to any navigable waters during periods of high water or flooding. The court held that although the lake was entirely within private property, the law prohibiting seining applied to the fish in the lake. The court in *Bridges* reasoned that before fish are captured they are not the property of the owner of the land surrounding the body of water, but are *ferae naturae*. (*Bridges*, 142 Ill. at 40.) According to

the court, the fish in the lake in question were *ferae naturae* because, during periods of high water, fish could swim back and forth between the lake and a nearby river and therefore did not remain within the control of the property owner. *Bridges*, 142 Ill. at 40-41.

The court recognized that "the power to protect and preserve the fish in the waters of the State" rests upon the following grounds:

"It is because of the great importance of fish as an article of human food, that their protection and preservation has been regarded as a matter of public concern, and it is upon that ground that Legislatures have assumed the right to interpose their authority by way of preventing any undue or improper hindrance in the way of their natural increase, and of prohibiting the use of improper means for their extirpation." *Bridges*, 142 Ill. at 39-40.

A 1933 Wisconsin case, conversely, considered whether the State had the same interest in a lake which was entirely separate from any other body of water. (*State v. Lipinske* (1933), 212 Wis. 421, 424-25, 249 N.W. 289, 291.) The court in *Lipinske* stated:

"It is well established that the title to all wild animals within its borders is held by the state in its capacity as sovereign for the benefit of the people of the state. [Citations.] When, however, a wild animal or fish has been legally appropriated and reduced to possession, it ceases to be a wild animal in the legal sense. *** When the animal or fish ceases to be wild in the legal sense, the power of the state over it ceases except such power as the state has with respect to the general property of its citizens. This seems elementary. Whether a landowner propagates fish in a glass bowl, a water tank, or a pond, such fish are not wild so long as they have no connection with navigable waters and so long as they are subject to the dominion and control of the owner. *** The habits of the animal do not determine whether or not it is *ferae naturae*. The circumstance that determines whether or not one has property in an animal ordinarily regarded as *ferae naturae* is the fact that it has been appropriated and reduced to possession." *Lipinske*, 212 Wis. at 424-25, 249 N.W. at 291.

That case held that a statute prohibiting the taking of fish from a certain geographic area did not prevent defendant from taking fish from a pond entirely within his own land. *Lipinske*, 212 Wis. at 425, 249 N.W. at 291.

For the purposes of this appeal we take as true plaintiff's contention that the quarries are completely contained within the relevant

parcel of property and that there is no connection between the water in the quarries and any navigable waters. If there is no connection between the water in the quarries and any other bodies of water, then the State's interest in regulating the fish is limited to its interest in regulating any type of animal or food. No fishing that takes place within the quarries has any impact on any other fishery in the State. None of the fish inside the quarries have come from any other body of water, and none of the fish in the quarries can leave the quarries of their own volition. Therefore, the fish in the quarries are sufficiently within the control of the owner of the property to divest the State of title.

In light of the historical rationale behind sections 2.1 and 2.2 of the Fish Code, a sensible interpretation of those provisions would exclude their application to a body of water which is totally within private property and totally separate from any other body of water.

■ At the time that plaintiff owned the property, therefore, the fish were its property. We now must determine whether plaintiff retained its property rights in the fish after it sold the parcel of real property in which the fish were located. Courts consider three factors when determining whether an item is personal property or whether it is part of the real estate:

"(1) the nature of its attachment to the realty; (2) its adaptation to and necessity for the purpose for which the premises are devoted; and (3) whether it was intended that the item in question should be considered part of the realty." (*Harrisburg Community School District No. 3 v. Steapleton* (1990), 195 Ill. App. 3d 1020, 1024.)

(Accord *B. Kreisman & Co. v. First Arlington National Bank* (1980), 91 Ill. App. 3d 847, 852.) The difficulty of the item's removal is relevant to both the nature of its attachment and the intent of the property owner. See *Harrisburg Community School District*, 195 Ill. App. 3d at 1024.

*Harrisburg Community School District* and *B. Kreisman* involved inanimate structures, and therefore the analysis employed in those cases does not fit easily into the facts of the instant case. It is also relevant, however, that growing and standing crops are considered part of the real estate and their ownership is with the owner of the land. (*Loepker v. Wesselman* (1991), 210 Ill. App. 3d 908, 909.) Trees are similarly considered part of the real estate. (98 C.J.S. *Woods & Forests* §2 (1957).) " '[T]he conveyance of the fee carries with it whatever is attached to the soil, be it grain growing, or anything else, and *** exceptions to the rule *** rest upon reservations

to be made by the vendor.' " (*Firebaugh v. Divan* (1904), 207 Ill. 287, 290, quoting 4 Kent's Commentary 468.) Crops and trees, however, provide an imperfect analogy because fish are generally not attached to the soil.

■ Common sense dictates, however, that while the fish are at large in the lakes, they are part of the real property. We have already discussed that the fish in this case are not *ferae naturae* because they are not free to roam throughout the waterways of Illinois. Nonetheless, they are not contained within a trap or tank, and therefore they are free to roam throughout whichever lake in which they are located. We do not mean to imply that there are no situations in which fish that are located in an inland body of water, and which are not the property of the State, are always real property. If a landowner placed fish in a pond with the purpose of raising them and then harvesting them to sell commercially, there may be an issue of fact as to whether the fish were movable personal property or business inventory.

We conclude, however, that the only reasonable inference from the facts in this record is that plaintiff placed the fish in the quarries with the intention of permanently improving the property. Joseph Tyrrell, part owner of plaintiff, states in his affidavit that plaintiff has stocked the quarries with fish and operated a "fee fishing and camping operation" on the property. This implies that the fish were game fish and that plaintiff allowed people to fish in the quarries in exchange for a fee. Certainly plaintiff intended some of the fish to be removed from the quarries in the course of the fishing activity of its guests. But if the fish that plaintiff stocked in the quarries were not, to some extent, "wild animals" and an integral part of the quarries, then there would be no sport to fishing for them. Therefore, we conclude that the fish are too much a part of the real property to be considered personal property.

Because plaintiff did not reserve its property right in the fish, the fish passed automatically to defendants along with the rest of the real property. We need not consider whether the trial court was correct in finding that plaintiff had abandoned the fish.

The judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

QUETSCH and COLWELL, JJ., concur.